NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 12, 2013
Decided October 15, 2013

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| Nos. 12-3440, 12-3645 & 12-3855 | Appeals from the United States District Court for the Northern District of Illinois, Western Division |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| *v.* | No. 11-CR-50025 |
| SHANNON L. GREGORY, DONALD P. CIPRA, and ERIC M. KONRADY, *Defendants-Appellants*. | **Philip G. Reinhard**, *Judge*. |

**O R D E R**

Based on information provided by an informant, a state judge issued warrants to search two residences in rural Illinois. The search revealed indoor cannabis-growing operations and led to the indictment of four men, including the three appellants. During

the subsequent criminal proceedings, the appellants moved to suppress the evidence discovered at the two residences, moved for a *Franks* hearing, and moved to compel the government to reveal the identity of the informant. All these motions were denied and the appellants pleaded guilty, but reserved the right to appeal the denials of their motions. The government concedes that remand is necessary to determine whether the identity of the informant should be disclosed. Consequently, we reverse the denial of the motion to compel. Because we remand for reconsideration of that motion, we abstain from addressing the denials of the other motions.

## I. Facts

On February 16, 2011, someone contacted Drug Enforcement Administration Officer Christopher Washburn and reported cannabis-growing operations at 1025 and 1027 Paw Paw Road in the Village of Paw Paw, Lee County, Illinois. The informant spoke on condition of anonymity, and stated that Donald Cipra lived at the 1025 residence, that Shannon Gregory lived at the 1027 residence, and that both were growing cannabis in the basements of the two residences. The informant also provided Washburn with photographs of an indoor cannabis-growing operation that were allegedly taken in the 1027 residence in December 2010. Additionally, the informant stated that the cannabis-growing operation at the 1025 residence was set up similarly to the operation at the 1027 residence. On February 28, Washburn issued an administrative subpoena to the power company that provided electricity to the two residences. The subpoena requested electricity-consumption records from several houses in the neighborhood of the two residences, and directed the company to provide the requested information by March 15. Washburn also informed Officer Alex Chavira, an Inspector for the Illinois State Police, of the allegations. Chavira asked Washburn to set up a conversation between Chavira and the informant.

On March 4, the informant telephoned Chavira and provided the following information: Gregory and Eric Konrady were living at the 1027 residence and growing cannabis in the basement. Similarly, Cipra, an associate of Gregory, was living at the 1025 residence and also was growing cannabis in the basement. The residences are located on the same parcel of land and share a common driveway. The operations in both residences were set up similarly. Cipra and Gregory used both soil operation

techniques and hydroponics,[1] primarily housed cannabis plants in the vegetative and flowering states in the 1025 residence, primarily housed "cloned" cannabis plants in the 1027 residence, and harvested cannabis all year round. The operations required high amounts of electricity and Gregory and Cipra paid the electric bills rather than stealing electricity (a practice that is evidently common in other cannabis-growing operations). The informant had been in the basement of the 1027 residence near the end of December 2010 and had observed about 480 cannabis plants. There were between 480 and 1000 cannabis plants at the two residences, depending on the harvest cycle. Cipra was the primary seller of the cannabis, while Gregory maintained both grow operations. Cipra and Gregory sold each pound of cannabis for about $5,000 or $6,000.

The informant further stated that he had known Cipra and Gregory for years, and had first-hand knowledge that both had been involved in the production, manufacture, and sale of cannabis in the Lee County area for about seven years. Cipra and Gregory regularly rented rural properties to grow cannabis, and they had been using the 1025 and 1027 residence for two years. Additionally, the informant cautioned Chavira that Cipra and Gregory possessed several handguns and assault rifles they had acquired after being robbed. Finally, the informant noted that Gregory drove a red Ford Explorer, and that Cipra drove a silver or dark gray Toyota Camry that he parked on the west side of the 1025 residence.

After this conversation, Chavira investigated and determined that Gregory and Cipra had firearms permits as well as prior convictions for possession of cannabis. Chavira also determined that a Toyota sedan was registered to Cipra. Further, Chavira discovered that Gregory was associated with several Illinois addresses. On March 9, Chavira contacted the power company that provided electricity to the two residences and requested the electricity-consumption information for the two residences. On March 16, the power company responded to Chavira's request. The response showed that Cipra was on the account for the 1025 residence and that the average monthly electricity-consumption rate at that residence was 3011 kilowatt hours. Similarly, the response showed that Gregory was on the account for the 1027 residence and that the average monthly electricity-consumption rate at that residence was 3938 kilowatt hours. Both electricity-consumption rates were significantly higher than the Illinois state average of 728 kilowatt hours. Chavira explained that, in his experience, indoor

---

[1] "Soil operations" (as the term suggests) refers to methods of growing plants in soil whereas "hydroponics" refers to methods of growing plants without soil.

cannabis-growing operations require large amounts of electricity. Furthermore, on March 18 the police photographed a red Ford Explorer in front of the garage at the 1027 residence, and a gray vehicle parked on the west side of the 1025 residence.

On March 22, Chavira sought search warrants for the 1025 and 1027 residences. In his supporting affidavits, Chavira stated that, based on his experience, the informant's statements about the market price for a pound of cannabis were accurate, and the informant's descriptions of the method and manner of the cannabis operation demonstrated that he was knowledgeable about the inner workings and demands of growing cannabis. Chavira also attached the photographs of the cannabis provided by the informant and police photographs of the residences to his affidavits.

On March 22, a state court judge issued search warrants for the 1025 and 1027 residences. On March 23, the police executed the warrants and discovered large-scale cannabis-growing operations as well as numerous weapons. The police arrested Gregory, Konrady, Cipra, and Benjamin Garcia.[2] Konrady and Cipra both confessed to their involvement in the cannabis-growing operations.

The defendants were indicted in federal court for various drug and weapon offenses arising out of the cannabis-growing operations at the 1025 and 1027 residences. Before pleading guilty, Konrady, Gregory, and Cipra each moved to suppress the evidence obtained from the search of the two residences on the theory that probable cause was lacking. Cipra also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on the theory that Chavira intentionally omitted from his affidavits adverse electricity-consumption information disclosed by the power company in response to Washburn's subpoena on April 5. (The power company did not respond to the subpoena until April 5, 2011— two weeks after the warrants issued. The response showed, *inter alia*, that two houses near the 1025 and 1027 residences had similar electricity-consumption rates to those of the 1025 and 1027 residences.)

The case then took a bizarre turn. In January 2012, the government disclosed to the defendants that the informant had left several voice mails for Washburn. Therein, the informant accused Washburn of falsifying documents to "get inside someone's house." The informant also claimed that Washburn told the informant to lie and that "this isn't what I signed up for, to lie." Thereafter, on February 28, the district court

---

[2] Garcia is not part of this appeal.

denied the motion to suppress on the ground that the warrant was supported by probable cause or, alternatively, the *Leon* good faith exception applies. In the same order, the district court denied the motion for a *Franks* hearing because Chavira did not have access to the April 5, 2011, electricity-consumption information when he prepared the warrant affidavits and, additionally, the April 5 electricity-consumption information "was not particularly weighty in light of the other evidence in the affidavit." Then, on March 1, the government disclosed to the defendants that the informant had posted comments on the internet under the header "UNDERCOVER BLACKHAWK TASK FORCE AGENT CHRIS WASHBURN (rockford illinois)." The post stated that "this lying sack of crap is a lie to obtain warrants AND stalk people abusing his power to screw up peoples lives." The post also identified Washburn's telephone number and stated, "YOU CAN CALL HIM HERE."

Cipra asked the government to disclose the identify of the informant, but the government refused to do so. Thereupon, Cipra, with whom Gregory and Konrady later joined, moved to compel the disclosure of the informant's identity so that they could interview the informant and determine if another motion to suppress or motion for a *Franks* hearing was appropriate. The government opposed the motion on the theory that, even if the informant's allegations were true, Chavira (and not Washburn) had prepared the affidavits and, at worst, Chavira had merely unwittingly included false statements told to him by a private third party. The district court accepted this reasoning and denied the motion to compel disclosure.

To add yet another twist, the government disclosed to the defendants that the informant was being prosecuted in Boone County, Illinois. At a subsequent hearing, counsel for Cipra stated that the brother of one of the defendants contacted him and requested representation in a Boone County prosecution sounding suspiciously like the government's prosecution of the informant. However, counsel explained that he had been unable to confirm his suspicion because he was unable to talk to the brother or find the brother in the Boone County Clerk's records. Thereafter, Konrady, Gregory, and Cipra each pleaded guilty, but they reserved the right to appeal the district court's various rulings. Having been sentenced, they now appeal.[3]

---

[3] Due to a secretarial error, Konrady's appeal was filed fifteen days late. However, the district court concluded that the late filing was excusable and extended Konrady's time to appeal in accordance with Rule 4(b)(4) of the Federal Rules of Appellate Procedure.

## II. Discussion

On appeal, Konrady, Gregory, and Cipra argue that the district court erred in finding that probable cause supported the warrants or, alternatively, in holding that the *Leon* good faith exception applies. The appellants also argue that the district court erred in declining to hold a *Franks* hearing based on the theory that the April 5 electricity-consumption information was intentionally omitted from Chavira's affidavits. (The appellants contend that this information undermined the notion that the electricity-consumption rates at the 1025 and 1027 residences were unusually high.) Finally, the appellants argue that the district court erred in declining to require the government to identify the informant and hold a *Franks* hearing regarding the informant's allegations against Washburn. Because we remand to allow the district court to reconsider its decision declining to require the government to identify the informant (which ultimately could affect whether the warrants are upheld), we refrain at this time from resolving the appellants' probable cause challenges and arguments regarding the alleged omission of the April 5 electricity-consumption information.

We review the district court's denial of the appellants' motion to compel disclosure of the identify of the informant for abuse of discretion. *United States v. Harris*, 531 F.3d 507, 514 (7th Cir. 2008). By definition, an error of law is an abuse of discretion. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). "The government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant." *Harris*, 531 F.3d at 514 (citing *Roviaro v. United States*, 353 U.S. 53, 59-60 (1957)). But this privilege must give way if the defendant proves that the disclosure of the informant's identity is relevant and helpful to his defense or is essential to a fair determination of the case. *Id.* Whether disclosure is appropriate depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62.

Here, the district court held that disclosure was unwarranted in part because a *Franks* hearing is not necessary when a third party lies to the officer preparing an affidavit and the officer incorporates those false statements into his affidavit.[4] *See United*

---

[4] The district court also held that the informant was "at most a tipster only." We have generally held that disclosure is not required if the informant is a mere tipster, rather than an

(continued...)

*States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) ("'[T]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation.'") (quoting *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994)). However, "while allegations that an *informant*, whose story was recited by an affiant, was lying are insufficient to require a *Franks* hearing, this principle does not apply when one *government* agent deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit." *McAllister*, 18 F.3d at 1417 (quoting *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984)). In this case, the informant's messages and online statements allege that Washburn demanded that the informant lie to Chavira. If the informant's allegations are true, then he "must be regarded as having acted as an '*instrument*' or *agent* of the state …." *McAllister*, 18 F.3d at 1417 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)). Thus, as the government concedes, the district court committed invited legal error by holding that, even if the informant's allegations were true, a *Franks* hearing was unnecessary because, at worst, the false statements came from a private third party. Because the informant's allegations indicate that the informant was acting as an instrument or agent of the state, the district court's reasoning in declining to compel disclosure was legal error that, by definition, amounts to an abuse of discretion.

Consequently, we must remand this case to allow the district court to reconsider whether to compel disclosure of the informant's identity. Should the district court order the government to disclose the informant's identity, the defendants will have the opportunity to determine if the informant is willing to stick to his story (in open court at a *Franks* hearing) that Washburn coerced him into lying about [having personal

---

[4](...continued)
eyewitness or participant to the event in question. *See Harris*, 531 F.3d at 515 (collecting cases). The notion that the informant was not an eyewitness is difficult to reconcile with the fact that the informant provided photographs of the cannabis-growing operation in the 1027 residence. Moreover, while the informant originally may have been a mere tipster, the government concedes that the informant's subsequent allegations of misconduct by Washburn during the investigation of the 1025 and 1027 residences transforms the informant into something more than a mere tipster. The district court also observed that the informant's messages and online statements do not specifically refer to the prosecution of Konrady, Gregory, and Cipra, and consequently the court reasoned that it is pure conjecture to say that Washburn caused the informant to lie in this case. But there is no evidence that the informant had ever assisted Washburn in any other case. So it is difficult to see how the informant's allegations reasonably could be interpreted to refer to anything other than the appellants' case.

knowledge of] the drug operation at the 1025 and 1027 residences. If so, then a *Franks* hearing will likely be necessary. Undoubtedly, the informant's claims are highly unusual given that so many of his statements to Chavira were confirmed by subsequent police investigation or borne out by the search itself. But perhaps the informant's claim is that Washburn illegally obtained the information about the cannabis-growing operations and then coerced the informant into pretending to be the source of the information. We think the best course is to leave the resolution of this matter for the district court on remand.

We **VACATE** the appellants' sentences, and we **REMAND** for reconsideration of the appellants' motion to compel the government to disclose the identity of the informant.