**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shannon L. GREGORY, Donald P.**
**Cipra, and Eric M. Konrady,**
**Defendants–Appellants.**

**Nos. 14–2747, 14–2759, 14–2792.**

United States Court of Appeals,
Seventh Circuit.

Argued May 20, 2015.

Decided Aug. 4, 2015.

Mark T. Karner, Attorney, Office of the United States Attorney, Rockford, IL, for Plaintiff–Appellee.

Frank C. Cook, Attorney, Freeport, IL, Donna A. Rotunno, Attorney, Law Offices of Rotunno & Giralamo, P.C., Westchester, IL, Mark A. Byrd, Attorney, Byrd & Taylor, Rockford, IL, for Defendants–Appellants.

Before BAUER, FLAUM, and HAMILTON Circuit Judges.

FLAUM, Circuit Judge.

Donald Cipra, Shannon Gregory, and Eric Konrady (collectively, the "Defendants") ran a cannabis grow operation at 1025 and 1027 Paw Paw Road in Lee County, Illinois for approximately two years. In February 2011, Shannon Gregory's brother—Scott Gregory—contacted the Drug Enforcement Agency ("DEA") and provided investigators with detailed information about' operation. DEA Agent Chris Washburn contacted Illinois State Police Inspector Alex Chavira, who independently verified much of Scott Gregory's information. Inspector Chavira subsequently sought search warrants in the Circuit Court of Lee County, which the court granted upon a finding of probable cause. Following a search of the 1025 and 1027 residences—which revealed an extensive cannabis grow operation—Cipra, Gregory, and Konrady were arrested and charged in federal court with various drug and weapon offenses. Defendants filed motions to suppress the evidence from the search, claiming a lack of probable cause. Additionally, in light of assertions from Scott

Gregory that investigators had asked him to lie about the information he provided to law enforcement, also requested a *Franks* hearing and filed a motion to compel the identity of the informant. The district court denied the motions.

Defendants pleaded guilty and were sentenced, but appealed the district court's rulings on the *Franks* hearing, the probable cause determination, and the motion to compel the identity of the informant. We remanded the case back to the district court to reconsider whether the identity of the informant (Scott Gregory) should be disclosed. *United States v. Gregory*, 545 Fed.Appx. 508 (7th Cir.2013). Following the remand, Scott Gregory's identity was revealed to and the district court held a *Franks* hearing. Following the hearing, the court denied' motion to suppress evidence and held that the search warrants were supported by probable cause. We affirm.

## I. Background

In February 2011, an anonymous informant contacted DEA Agent Chris Washburn with information that an indoor cannabis grow operation was taking place at 1025 and 1027 Paw Paw Road in Lee County, Illinois (the "1025 residence" and "1027 residence," respectively). Agent Washburn subsequently contacted Inspector Alex Chavira with the Illinois State Police Blackhawk Area Task Force on February 16, 2011 and relayed the following information from his conversation with the informant: Donald Cipra and Shannon Gregory were maintaining a cannabis grow operation at the 1025 and 1027 residences. The informant had been in the basement of the 1027 residence in December 2010 and took photographs of the cannabis plants; he provided Agent Washburn with these photographs, and indicated that a

similar operation was in effect in the basement of the 1025 residence. On February 28, 2011, Agent Washburn issued an administrative subpoena to Commonwealth Edison ("ComEd") to obtain electricity consumption information for the 1025 and 1027 residences and for nearby residences.

On March 4, 2011 the informant contacted Inspector Chavira directly and provided him with the following information: Donald Cipra resided at the 1025 residence, and Shannon Gregory and Eric Konrady resided at the 1027 residence. Both residences are located on the same parcel of land and share a common driveway. Cipra and Shannon Gregory had been growing and selling cannabis for the last seven years, the last two of which they did so out of the 1025 and 1027 residences. The informant stated that Shannon Gregory maintained the grow operations, and that Cipra was the primary seller. While the 1025 residence was used to house plants in the vegetative and flowering stages, the 1027 residence was used primarily to house "clone" cannabis plants. The informant told investigators that Cipra and Shannon Gregory were maintaining a perpetual, year round harvest—using both soil and hydroponic techniques—and that the men were selling the cannabis for between $5,000 and $6,000 a pound. The informant reiterated that he had personally been in the basement of the 1027 residence three months earlier and had observed approximately 480 cannabis plants set up on tables throughout the basement; he had also taken photographs of these plants and provided them to Agent Washburn. The informant further told Inspector Chavira that Shannon Gregory had high electric usage, but that Shannon paid for this usage himself rather than stealing it.

According to the informant, Cipra and Shannon Gregory acquired firearms for protection after being robbed in the summer of 2009. Specifically, the informant stated that Cipra and Shannon Gregory possessed an AR–15, a 30–30, a MAC 10, a nickel plated 9MM, and possibly other firearms. The informant also stated that he had personally observed Shannon Gregory and Cipra wearing holstered handguns inside their residences. The informant said that Cipra drove a silver or dark gray Toyota Camry (which, the informant indicated, Cipra parked on the west side of the 1025 residence), and that Shannon Gregory drove a red Ford Explorer. Shannon Gregory and Cipra rarely left their residences, according to the informant, out of a fear that they would be robbed.

Inspector Chavira was able to verify much of the information that the informant provided. Through his investigation, Inspector Chavira learned that both Cipra and Shannon Gregory had valid Firearms Owners Identification Cards and prior convictions for cannabis possession. Inspector Chavira learned that Cipra was the owner and current resident of the 1025 residence, and that a 2008 Toyota sedan was registered in his name; a gray vehicle was captured in a surveillance photo parked on the west side of the 1025 residence, just as the informant had described. Inspector Chavira also learned that the ComEd account for the 1027 residence was registered in Shannon Gregory's name, and that a red Ford Explorer was photographed in front of the 1027 residence. Inspector Chavira was also able to obtain the following electricity consumption information from ComEd: (1) the average monthly electricity consumption rate for the 1025 residence was 3011 kilowatt hours; and (2) the average monthly electricity consumption rate for the 1027 residence was 3938 kilowatt hours. Reviewing information from the U.S. Energy Information Administration, Inspector Chavira determined that the average monthly rate of electricity consumption in Illinois was 728 kilowatt hours. (We note that when

Inspector Chavira obtained this information, ComEd still had not responded to Agent Washburn's administrative subpoena from February 28, 2011.)

On March 22, 2011, Inspector Chavira sought no-knock search warrants for the 1025 and 1027 residences in the Circuit Court of Lee County, and the court issued the warrants. In seeking the warrants, Inspector Chavira relayed the information given to him by the informant, as well as his own corroboration of that information. However, Inspector Chavira did not reveal the informant's identity to the court (because the informant was adamant that he would not provide his name, even to law enforcement), nor did the informant appear in person to testify. On March 23, police executed the search warrants and uncovered a large-scale cannabis grow operation, as well as weapons, at the 1025 and 1027 residences. Cipra, Shannon Gregory, Konrady, and a fourth co-defendant, Garcia (who is not a party to this appeal), were arrested.

Konrady, Cipra, and Shannon Gregory (collectively, the "Defendants") were indicted in the United States District Court for the Northern District of Illinois for various drug and weapon offenses following their arrest; Defendants subsequently moved to suppress the evidence obtained during the March 2011 search on the theory that the search warrants lacked probable cause. Cipra also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978),[1] claiming that Inspector Chavira intentionally omitted adverse electricity consumption information disclosed by ComEd in its response to Agent Washburn's original subpoena. (This response was dated April 6, 2011, which was twenty-two days after the subpoena's stated compliance date and fifteen days after Inspector Chavira obtained the no-knock search warrants. The response showed that other residences near 1025 and 1027 had electricity consumption rates that were similar to the rates at the 1025 and 1027 residences.)

In January 2012, the government disclosed to Defendants that the informant had left several voicemails for Agent Washburn accusing him of falsifying documents to "get inside someone's house." The informant also apparently accused Agent Washburn of asking him to lie, stating, "this isn't what I signed up for: to lie." The government also notified Defendants when the informant posted comments about Agent Washburn on Craigslist which stated:

**UNDERCOVER BLACKHAWK TASK FORCE AGENT CHRIS WASHBURN (rock-ford illinois)** this lying sack of crap is a lie to obtain warrants AND stalk people abusing his power to screw up peoples lives. YOU CAN CALL HIM HERE AND ASK: 1–779–537–6742.

After learning of these allegations, Cipra filed a motion to compel disclosure of the informant's identity (which, recall, was still unknown to Defendants), and also renewed his request for a *Franks* hearing. On February 28, 2012, the district court denied Cipra's motions.

Following their sentencing,[2] Defendants appealed the district court's determination

---

1. *Franks v. Delaware* held that
where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

2. Although Defendants entered pleas of guilty, they reserved the right to challenge some of the district court's rulings on appeal.

that probable cause existed for the search warrants, the court's denial of a *Franks* hearing, and the court's denial of Defendants' motion to compel the identity of the informant. In an order dated October 15, 2013, we vacated Defendants' sentences and remanded with instructions to reconsider whether the identity of the informant should be disclosed. *United States v. Gregory*, 545 Fed.Appx. 508 (7th Cir.2013). After the remand, the district court ordered the disclosure of the informant's identity; the informant turned out to be Shannon Gregory's brother, Scott Gregory. After Defendants obtained an affidavit from Scott Gregory, they filed a motion to suppress evidence and a request for a *Franks* hearing. The government agreed that a *Franks* hearing was justified, and the district court held the hearing on May 21, 2014.

Defendants raised several important issues during the May 2014 *Franks* hearing. One such issue was the date on which the photographs were taken depicting—according to Scott Gregory—the indoor cannabis grow operation at the 1027 Paw Paw residence (the "cannabis photographs"). Agent Washburn testified at the hearing that when he obtained the cannabis photographs from Scott Gregory (which were given to him on a USB drive), Scott Gregory told him the photographs were taken in December 2010. Defendants cross-examined Agent Washburn during the hearing, showing him printouts of the cannabis photographs which contained a directory accompanying the JPG images. The directory showed that the twelve photographs were actually taken on five different dates, ranging from April 12, 2010 to November 15, 2010. Agent Washburn testified that he never saw the directory accompanying the photographs prior to the hearing, and did not know that the photographs were taken earlier than December 2010. However, Defendants argued that Agent Washburn probably did see the directory containing the photograph dates, but ignored them in order to artificially inflate the appearance of probable cause in seeking the search warrants.

Defendants also argued at the *Franks* hearing that the energy consumption data included in Inspector Chavira's warrant applications was suspect—namely, that the data did not include energy consumption rates of homes nearby the 1025 and 1027 residences. Such information may have undermined a probable cause finding, according to Defendants, because when ComEd finally responded to Agent Washburn's subpoena in April 2011 (which he initially submitted in February 2011), this response showed that the 1025 and 1027 residences had electricity consumption rates which were not atypical compared to other residences in the area. Inspector Chavira testified at the hearing that he did not have access to the information obtained through Agent Washburn's subpoena when he prepared his warrant affidavits in March 2011, and that his failure to seek and obtain other, similar information was an oversight and was not deliberate. Conversely, Defendants contended that Inspector Chavira omitted this information intentionally, or at least recklessly, in order to conceal information which may have weakened the claim that the electricity consumption at the 1025 and 1027 residences was indicative of a marijuana grow operation.

Finally, Scott Gregory testified that investigators asked him to lie about the date on which the cannabis photographs were taken. However, Agent Washburn testified that during the course of his dealings with Scott Gregory, Gregory became upset with Agent Washburn over the amount of money that he would be paid for his cooperation with the investigation. That dissatisfaction, Agent Washburn testified, prompted Scott Gregory to send Agent

Washburn text messages, leave him angry voicemails, and post derogatory messages on the internet about Agent Washburn, wherein Gregory accused Agent Washburn of asking him to lie.

Following the *Franks* hearing, the district court denied Defendants' motion to suppress evidence. The district court determined that Agent Washburn and Inspector Chavira testified truthfully, and that Scott Gregory was not credible. The court further determined that the investigators had not seen the photo directory information indicating that the cannabis photographs were taken earlier than December 2010, and that they did not deliberately or recklessly omit energy consumption data from their applications for search warrants. The district court further held that the search warrants were supported by probable cause, and that even if they were not, the evidence from the search was obtained pursuant to the good-faith exception as outlined in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Defendants appealed.

## II. Discussion

■ We review the district court's determination that the search warrants were supported by probable cause de novo. *United States v. Roth*, 201 F.3d 888, 891 (7th Cir.2000). Additionally, because the district court denied Defendants' motion to suppress following a *Franks* hearing, we review the district court's factual findings following the hearing—as well as the court's denial of Defendants' motion to suppress—for clear error. *United States v. Norris*, 640 F.3d 295, 299–301 (7th Cir. 2011); *United States v. Taylor*, 471 F.3d 832, 838 (7th Cir.2006).

### A. Probable Cause

■ "A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search there-

of will uncover evidence of a crime." *Roth*, 201 F.3d at 892 (citation and internal quotation marks omitted). When an application for a search warrant is supported by an informant's tip, courts consider the totality of the circumstances to determine whether that information establishes probable cause for the search, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired firsthand knowledge of the events; (3) the amount of detail provided; (4) the amount of time between the date of the events and the application for the search warrant; and (5) whether the informant personally appeared before the judge issuing the warrant. *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir.2002).

■ Here, Scott Gregory's information was largely corroborated by Inspector Chavira, reflective of Scott Gregory's firsthand knowledge, and very detailed. While Scott Gregory did not testify in person before the Circuit Court of Lee County, we find that the totality of the circumstances supports a finding of probable cause. First, Inspector Chavira corroborated that Cipra and Shannon Gregory were listed on the electrical utility accounts for the 1025 and 1027 Paw Paw residences, which verified the basic assertion that they lived there. Next, investigators discovered that Cipra and Shannon Gregory had previous convictions for cannabis possession and that both had valid Firearms Owners Identification Cards; this dovetailed with Scott Gregory's information that Cipra and Shannon Gregory grew and sold cannabis, and that they possessed firearms for protection. Investigators further learned that, consistent with Scott Gregory's representations, a 2008 Toyota sedan was registered in Cipra's name, and that a gray vehicle was seen parked near the 1025 residence

(which Scott Gregory claimed was Cipra's residence). Investigators also observed a red Ford Explorer parked in front of the 1027 residence, which Scott Gregory claimed was Shannon Gregory's residence; this matched Scott Gregory's description of Shannon Gregory's car exactly, down to the car's make, model, and color.

To summarize, Scott Gregory provided accurate information to law enforcement about where Cipra and Shannon Gregory lived, what cars they drove, and that they owned firearms. Not only does this reflect sufficient corroboration of Scott Gregory's information by law enforcement, it also reflects the firsthand nature of Scott Gregory's descriptions. (It would be peculiar for Scott Gregory to have specific familiarity with Cipra's and Shannon Gregory's residences, vehicles (down to the make, model, and color), and whether they possessed firearms unless Scott Gregory had firsthand knowledge of these facts.) Also reflective of the firsthand quality of Scott Gregory's information, he conveyed a very detailed understanding of how Defendants' cannabis operation worked. He indicated that Cipra and Shannon Gregory had been running an indoor cannabis grow operation for over seven years, and that for the last two years, they based their operation out of the 1025 and 1027 residences. He also specifically estimated the number of cannabis plants that he personally observed inside the 1027 residence (480), provided photographs of those plants, and informed investigators of how much Cipra and Shannon Gregory would sell the cannabis for once harvested (a price that comported with investigators' experience in the field). Although Scott Gregory did not provide photographs from the 1025 residence, he communicated specific knowledge of its role in the operation—i.e., that the 1025 residence housed cannabis plants in the vegetative and flowering stages, while the 1027 residence housed "cloned" cannabis plants.

Scott Gregory also informed investigators of the various methods used by Defendants to grow and harvest the plants (soil and hydroponics), knew that Shannon Gregory used a high amount of electricity, but understood that he paid for this electricity himself rather than stealing it (which is common practice in the drug trade). Scott Gregory also described the roles of Cipra and Shannon Gregory in running their operation: Shannon Gregory was the primary grower, and Cipra the seller. Finally, Scott Gregory provided detailed descriptions of the firearms that he knew Cipra and Shannon Gregory to possess, and stated that he had personally observed both men wearing holstered handguns inside their homes. The detailed and firsthand nature of Scott Gregory's information weighs in favor of affirming the probable cause determination originally made by the state court and subsequently assessed by the district court.

Next, we consider how recent Scott Gregory's information was when he contacted law enforcement. This question implicates the dates of the photographs that Scott Gregory provided to investigators. Scott Gregory originally informed investigators that the cannabis photographs were taken at the 1027 residence in December 2010; Scott Gregory contacted Agent Washburn for the first time in February 2011. However, the directory accompanying the JPG files—which was introduced as evidence during the *Franks* hearing—reveals that the photographs were actually taken on dates ranging from April 12, 2010 to November 15, 2010. Defendants argue that this should weigh against a finding of probable cause. However, "[i]t is well established that the passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." *United States v. Mit-*

*ten,* 592 F.3d 767, 775 (7th Cir.2010) (citation and internal quotation marks omitted). Here, Scott Gregory described that Cipra and Shannon Gregory engaged in an ongoing pattern of growing and selling cannabis for the last seven years, and that for the last two years they operated out of the 1025 and 1027 residences. Furthermore, of the twelve photographs that Scott Gregory turned over to the DEA, five of them were taken on November 15, 2010; this is not much earlier than when Scott Gregory originally told investigators the photographs were taken (sometime in December 2010). Thus, we are not convinced that the dates on the cannabis photographs cut against a finding of probable cause. And while it is true that Scott Gregory did not appear in person to testify when the Circuit Court of Lee County made its probable cause determination, that fact alone does not counteract the strength of the firsthand information that he provided to law enforcement. Thus, we conclude that probable cause existed for the search warrants issued by the Circuit Court of Lee County.

■ Finally, the district court concluded that even if the search warrants were not supported by probable cause, that the good-faith exception under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) applied. We agree. *Leon* makes clear that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. 3405. As *Leon* permits, Agent Washburn and Inspector Chavira placed "objectively reasonable reliance" on the state court judge's determination that probable cause existed for the search warrants, and thus regardless of whether probable cause actually existed, the district court was correct to conclude that evidence suppression was not the appropriate remedy here. *Id.* at 922, 104 S.Ct. 3405.

**B. Conclusions Following the *Franks* Hearing**

■ Under the standard of *Franks v. Delaware,* evidence recovered from a search must be suppressed if a defendant proves by a preponderance of the evidence that: (1) the affidavit contained material false statements or omissions; (2) these false statements or omissions were made with deliberate or reckless disregard for the truth; and (3) these false statements or omissions were necessary to a finding of probable cause. 438 U.S. at 155–56, 98 S.Ct. 2674; *see also United States v. Williams,* 718 F.3d 644, 647–48 (7th Cir. 2013). Defendants raised two arguments during the *Franks* hearing—and do so again on appeal—regarding allegedly false information used to obtain the search warrants. First, Defendants claim that the affidavits included false information about when the cannabis photographs were taken. Second, Defendants claim that Inspector Chavira either deliberately or recklessly included misleading electricity consumption information in his affidavits in support of the search warrants.

■ On the issue of the cannabis photographs, Defendants either Inspector Chavira or Agent Washburn knew that Scott Gregory's photographs were taken between April and November 2010, rather than in December 2010. During the *Franks* hearing, Scott Gregory testified that Agent Washburn asked him to lie about the dates of the photographs. In contrast, Agent Washburn testified that he never asked Scott Gregory to lie about the

photograph dates. Agent Washburn and Inspector Chavira also testified that they never saw a directory of the photographs showing that they were taken earlier than December 2010. After hearing the testimony of Scott Gregory, Agent Washburn, and Inspector Chavira, the district court concluded that Scott Gregory's claim was not credible, and that the investigators testified truthfully in claiming that they never saw a dated photograph directory. Notably, the district court mentioned in reaching its decision that Defendants presented no evidence about whether a photograph directory would have appeared alongside the photographs when they were opened from the USB drive that Scott Gregory provided to Agent Washburn. In light of this missing evidentiary link, we see no reason to question the district court's determination that Agent Washburn and Inspector Chavira were testifying truthfully about having never seen a dated photograph directory accompanying Scott Gregory's photographs.

Additionally, the district court made this credibility determination partially in light of Scott Gregory's potential incentives to lie. Specifically, the court noted that Scott Gregory—because he is Shannon Gregory's brother—could be feeling some amount of remorse for orchestrating his brother's arrest and conviction. Additionally, the court highlighted Agent Washburn's testimony that Scott Gregory was unhappy about the $1500 he was ultimately paid for his cooperation with law enforcement, and that he threatened to falsely accuse the investigators of lying if he did not receive more money. Especially in light of these incentives, we see no reason to disturb the district court's credibility determination here. *See United States v. Gonzalez*, 765 F.3d 732, 738 (7th Cir.2014) (noting that "a district court's determination of witness credibility ... can virtually never be clear error"). Thus, even though the search warrant affidavits in this case included false information about when the cannabis photographs were taken, we agree with the district court that there is no evidence that investigators included this information recklessly or deliberately.

■ Additionally, the district court was reasonable to conclude that Inspector Chavira did not deliberately or recklessly exclude any of the adverse electricity consumption evidence from his affidavits in support of the search warrants. The evidence to which Defendants refer—which shows that other residences near the 1025 and 1027 residences had similar rates of monthly electricity consumption—was not available to Inspector Chavira when he prepared the affidavits, as ComEd was late in responding to Agent Washburn's original administrative subpoena. Thus, there is no viable argument that Inspector Chavira had access to this information at the time that he prepared his affidavits but simply chose not to include it. Nonetheless, Defendants argue that it was reckless for Inspector Chavira not to include comparable rates of electricity consumption for nearby residences in his search warrant affidavits. Conversely, Inspector Chavira testified that his failure to include comparable rates was merely an oversight, and that he proceeded to prepare the affidavits without this evidence because he did not believe it to be crucial to a finding of probable cause. The district court found this claim to be credible, and once again, we see no reason to disagree. Additionally, the district court concluded that even if the electricity consumption evidence had been stricken from the affidavit, other evidence provided by Scott Gregory was sufficient to establish probable cause. Given the extensive and detailed nature of the information Scott Gregory provided to law enforcement (as we explained above in analyzing the existence of probable cause), we agree.

Thus, we affirm the conclusions reached by the district court following the *Franks* hearing in this case. We agree that Defendants failed to show that investigators deliberately or recklessly included false information—or omitted material information—that was necessary to a finding of probable cause. *Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674.

### III. Conclusion

For these reasons, the district court did not err in denying Defendants' motion to suppress the evidence recovered in the search of the 1025 and 1027 residences. Accordingly, we AFFIRM.