In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3595

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 290 — **Joan Humphrey Lefkow**, *Judge.*

ARGUED MAY 16, 2017 — DECIDED AUGUST 11, 2017

Before BAUER, FLAUM, and KANNE, *Circuit Judges*.

BAUER, *Circuit Judge.* Defendant Ronald Johnson entered a conditional guilty plea to one count of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1), reserving the right to appeal the denials of his motions to suppress the evidence found in his condominium. Johnson now challenges those denials. We affirm.

## I. BACKGROUND

### A. Search Warrant Affidavit

On April 12, 2011, Agent Paul Matuszczak of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, applied for a search warrant for Johnson's condominium located at 728 W. Jackson Blvd., Unit #310, in Chicago, Illinois (the "Jackson residence" or "condo"). The search warrant affidavit, which also incorporated by reference an affidavit submitted in support of the search of informant Loren Coleman's residence, included the following information.

On March 30, 2011, a grand jury returned an indictment charging Coleman with two counts of being a felon in possession of a firearm, 21 U.S.C. § 922(g), and two counts of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1). On that same day, the district court issued a warrant for Coleman's arrest.

On April 12, 2011, ATF agents executed the warrant at Coleman's residence, located in Chicago, Illinois. During a protective sweep, the agents observed a tannish substance on a bedroom dresser that appeared to be heroin. The agents asked for permission to search the apartment, but Coleman refused. After reading Coleman his *Miranda* rights, the agents asked about the substance; Coleman responded that it was heroin for his personal use, that he used heroin the previous night, and that he expected to suffer from withdrawal within two hours.

After the agents escorted Coleman out of the apartment and placed him in a law enforcement vehicle, they interviewed his

wife, Charisse Coleman, at the residence. According to Charisse, Coleman kept a gun in the bedroom. She said that the last time she saw Coleman use the gun was on December 31, 2010, when she observed him shoot a round out of the residence's window. According to Charisse, Johnson and Coleman had been selling heroin for the past 20 years. She told agents that Johnson was the leader of a crew of five to six other heroin dealers, who were all members of the Gangster Disciples. She said that, over the past year, Coleman would acquire heroin from Johnson and resell it. She stated that, up until a few months prior, Johnson and Coleman would bag heroin at her residence and that she had occasionally passed through the room where they were completing this task. She recalled seeing Johnson and Coleman in her residence with heroin, guns, and money in October or November 2010. She said that she overheard several phone conversations between Coleman and Johnson in 2011 that involved code words for heroin deals. She stated that a few months prior Coleman told her that he and Johnson began bagging the heroin at Johnson's new residence located in Greektown, a neighborhood in Chicago; Agent Matuszczak testified that the condo is directly across the highway from the Chicago neighborhood known as "Greektown." Charisse ultimately consented to the search of the residence.

The agents then re-approached Coleman and told him they would transport him to the hospital before he got sick. Coleman then said, unprompted, "That shit up there ain't [Charisse's], let's work out a deal." Agents responded that they could not make him a deal. The agents read Coleman his *Miranda* rights again and provided him a waiver form, which

he signed. Coleman then told the agents that he had two guns and 100 grams of heroin inside the residence. The agents again asked Coleman for consent to search; he agreed. Coleman was then transported to the hospital.

Despite receiving consent from both Coleman and Charisse, agents obtained and executed a search warrant for Coleman's residence where they found a variety of drug paraphernalia, two guns, and approximately 168 grams of heroin.

At some point, Coleman was again advised of and had waived his *Miranda* rights before being interviewed by agents. During the interview, Coleman stated that he bought 150-200 grams of heroin per week from Johnson and that Johnson provided most of the heroin he sold. He purchased drugs at Johnson's condo, which he told the agents was unit #310 at the Jackson residence. He would pay Johnson $13,000 for 200 grams of heroin, but, frequently, would pay Johnson a portion of the $13,000 up front and pay the remaining balance after he sold the drugs. He stated that he bought 200 grams of heroin from Johnson at his condo on April 10, 2011, for which he paid him $6,500 and promised to pay the remaining $6,500 after he sold the heroin. Agents showed Coleman a driver's license photo of Johnson, and Coleman indicated that the person in the photo was the same person who he bought heroin from on a weekly basis.

The agents performed a search on a law enforcement database for Johnson's and Coleman's prior convictions. According to the search, Coleman had three convictions for manufacturing and delivering a controlled substance. He also had convictions for passing a forged check, possession of a

controlled substance, and aggravated unlawful discharge of a firearm in a vehicle. The search for Johnson's criminal history revealed that he had a state conviction in 2002 for manufacturing and delivering a controlled substance.

Agents also performed a search on two other databases, Westlaw and Accurint, for more information on Johnson. The databases revealed that the registered owner of unit #310 was Francine Johnson. The Accurint database listed Ronald Johnson as a person "associated" with this address. Agent Matuszczak indicated in the affidavit that, based on his experience, a person associated with this address could mean several things, including that the person listed the address on a utility bill, credit card application, or a library card.

Agents also inquired about Johnson with the Chicago Police Department who informed the agents that it was running an ongoing money laundering investigation involving Johnson. Based on their investigation, CPD officers concluded that Francine was Johnson's sister, but she did not actually live at the address. CPD officers also followed Johnson to and from the condo on several occasions, including twice on February 25, 2011. According to CPD records, Johnson received a parking ticket outside the residence in December 2010.

Agent Matuszczak testified that individuals who possess 150-200 grams of heroin are distributing drugs, and drug dealers often keep drugs, money, records, and weapons at their residences. Based on this information, he concluded that there was probable cause to believe contraband relating to criminal conduct would be found in the Jackson residence.

### B. Johnson's Arrest

On April 12, 2011, ATF agents obtained and executed a search warrant for Johnson's condo.[1] During the search, the agents seized approximately 4.8 kilograms of heroin, approximately $155,000 in cash, a digital scale, plastic baggies, and other items used to repackage and sell drugs. In a post-arrest interview, Johnson admitted owning the drugs and money found in the condo.

### C. Procedural History

On May 11, 2011, Johnson was indicted on one count of possession of heroin with intent to distribute. On June 23, 2011, Johnson moved to quash the search warrant and suppress the evidence, claiming that the government lacked probable cause to support the issuance of the search warrant. He claimed, among other things, that the search warrant affidavit did not contain sufficient information about Coleman and Charisse's credibility and reliability.

On September 20, 2011, the district court denied the motion, finding that the search warrant was supported by probable cause and that, even if the search warrant was not supported by probable cause, the agents relied on the warrant in good faith.

Johnson then moved to reconsider, reiterating the same arguments in his initial motion. The district court continued the motion because Johnson's counsel withdrew due to a

---

[1] The search warrant for the Coleman and Johnson's residences were both issued by Magistrate Judge Jeffrey Gilbert.

conflict. With new counsel, Johnson filed a supplemental motion to suppress and requested an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

On June 27, 2012, the district court denied the motions and the request for a *Franks* hearing. The court found that Johnson's arguments supporting his request for a *Franks* hearing were either factually inaccurate or based on omissions that were immaterial.

On May 22, 2013, Johnson pleaded guilty pursuant to a plea agreement, reserving the right to appeal the denial of his motions to suppress. He was sentenced to 121 months' imprisonment. This appeal followed.

## II. DISCUSSION

Johnson contends that the district court erred in denying his motions to suppress and his request for a *Franks* hearing. When reviewing the denial of a motion to suppress, we review the district court's legal conclusions *de novo* and factual findings for clear error. *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014). We review a district court's denial of a *Franks* hearing for clear error, but any legal determinations that factored into its ruling are reviewed *de novo*. *United States v. Jones*, 208 F.3d 603, 606 (7th Cir. 2000).

Johnson argues that the district court erred in denying his suppression motion because the search warrant affidavit was not supported by probable cause. "A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *United States v.*

*Gregory*, 795 F.3d 735, 741 (7th Cir. 2015) (citation omitted). Where, as here, an affidavit is the only evidence presented in support of a search warrant, the validity of the warrant depends solely on the strength of the affidavit. *United States v. Carson*, 582 F.3d 827, 831–32 (7th Cir. 2009).

Where the affidavit is supported by information from an informant, we employ a totality-of-the-circumstances inquiry to determine whether that information establishes probable cause for the search. *Gregory*, 795 F.3d at 741. This inquiry encompasses several factors, including: "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate." *Glover*, 755 F.3d at 816. No one factor is dispositive; a deficiency in one factor may be compensated by a stronger showing in others. *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) (citation omitted). We give "great deference" to the issuing judge's conclusion that there is probable cause. *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013) (citation omitted).

The known facts and circumstances here support a finding of probable cause. Coleman's description of the activities at Johnson's condo was detailed and based on firsthand knowledge. He specified that he purchased 150-200 grams of heroin from Johnson on a weekly basis. He described to agents the manner in which he paid for the heroin and how much it cost. He told agents the location where he purchased the heroin, and he specified the unit number of the condo. He told agents that his most recent purchase of 200 grams of heroin at

Johnson's condo was on April 10, 2011, merely two days before agents obtained and executed a search warrant at the condo.

Moreover, Coleman's statements were corroborated by Charisse's account of previously observing Johnson and Coleman's drug-dealing activities and knowing about their long-term relationship. Charisse described to agents how she saw Coleman and Johnson bag heroin at her residence. She also told agents that Coleman told her that they recently switched to bagging heroin at Johnson's new residence in Greektown, which is across the highway from where Johnson's condo was located. She provided information regarding the extent of Johnson and Coleman's relationship, such as being in the same gang and dealing heroin for the past 20 years.

The affidavit included other corroborating information as well, although with limited significance. The Accurint search showed that Johnson was "associated" with the Jackson residence. Agent Matuszczak explained that "associated" means that the person listed the address on a utility bill or library card. Agents also learned more about Johnson's association with the condo unit from CPD officers who were investigating him for money laundering. Although the parking ticket outside the condominium building also has very limited significance, it is one of several pieces of evidence that show Johnson's association with the location. While, as Johnson argues, none of these facts directly indicate that Johnson distributed heroin at the condo, they do further support the reliability of Coleman's statements that it was Johnson's condo.

Johnson takes issue with the fact that Coleman was an untested, newly arrested informant who used heroin the night

before and had impending symptoms of heroin withdrawal. But this narrow view of the evidence is contrary to our totality-of-the-circumstances inquiry. Despite being a newly arrested informant, whose statements we take with a "greater dose of skepticism," *United States v. Olson*, 408 F.3d 366, 370–71 (7th Cir. 2005), Coleman's admissions that he purchased and dealt drugs were statements against his penal interest and thus "a weighty factor in establishing probable cause even if the statements have not been proven reliable[,]" *United States v. Lake*, 500 F.3d 629, 633 (7th Cir. 2007). It was clear that, even at his own expense, his primary motivation was to protect Charisse from criminal liability, giving him a "strong incentive" to provide accurate information to the agents. *Olson*, 408 F.3d at 371 (citation omitted). Indeed, the affidavit noted that Coleman was cooperating in hopes of receiving consideration on criminal charges. Moreover, the recent nature of Coleman's latest heroin transaction at Johnson's condo gave agents further reason to rely on his statements. *See Lake*, 500 F.3d at 633 (citation omitted).

Additionally, Johnson supplies further reason to find Coleman reliable and credible. In Johnson's attempts to discount the fact that Coleman was able to identify a driver's license photo of him, he argues that this fact is unhelpful because "agents knew that the Colemans and Mr. Johnson were friends who had known each other for a long time … ." Indeed, the affidavit made this long-term relationship apparent when it provided Charisse's statements that Coleman and Johnson had been in the same gang and sold heroin for the past 20 years.

We have considered Johnson's other arguments on the probable-cause issue, but none merit discussion.[2] Because the search warrant affidavit was supported by probable cause, the district court properly denied Johnson's motions to suppress.

Finally, Johnson's argument that the district erred when it denied his request for a *Franks* hearing is equally without merit. The first alleged omission is immaterial, the second alleged omission is not even an omission, and the third alleged omission is not an omission because the alleged contradictory statement did not present itself until May 2011, after the warrant was issued. The district court properly determined that Johnson's allegations about omissions in the search warrant affidavit did not amount to the "substantial preliminary showing" required to obtain a *Franks* hearing. 438 U.S. at 170. We find no error.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[2] Johnson also challenges the district court's determination that the good-faith exception would apply as an alternative ground for denying his motions to suppress. *See United States v. Watts*, 535 F.3d 650, 656–57 (7th Cir. 2008) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984)). Because we hold that the search warrant was supported by probable cause and thus not unconstitutional, we need not address this argument.