In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-1057

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID HUESTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 21-CR-37 — **Holly A. Brady**, *Chief Judge.*

_____

ARGUED DECEMBER 1, 2023 — DECIDED JANUARY 12, 2024

_____

Before WOOD, ST. EVE, and LEE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* A tipster alerted law enforcement that David Hueston was dealing drugs out of his Marion, Indiana apartment. After a brief investigation, detectives obtained a search warrant and discovered Hueston along with drugs, cash, a gun, and ammunition in the apartment. Indicted on various drug-related charges, Hueston moved to suppress the evidence, arguing that the detectives deliberately or recklessly made misleading omissions and

misrepresentations to obtain the search warrant. The district court denied Hueston's motion to suppress after holding a *Franks* hearing, and Hueston now appeals that decision.

## I. Background

### A. Investigation

In February 2021, a tipster reported to a Grant County, Indiana Sheriff's Deputy that David Hueston was dealing drugs. That deputy passed the information along to the Joint Effort Against Narcotics ("JEAN") Team Drug Task Force. A few days later, Detectives Michael Ross and Leland Smith, members of the JEAN Team and Marion, Indiana police officers, met with the tipster.

In a partially recorded conversation, the tipster explained that he wanted to break his methamphetamine addiction by turning in his dealer, Hueston, to police. He told detectives he had been buying drugs from Hueston for a few months. In fact, he had been in Hueston's apartment three or four days earlier and seen a softball-sized bag of heroin and three pounds of methamphetamine. He also reported that Hueston had guns "just laying around."

After showing the detectives Hueston's picture, the tipster rode with them to the duplex in Marion where he claimed Hueston lived. He identified the front door of the building, explaining that the building had only two interior doors, one leading to the downstairs apartment and another leading to Hueston's apartment upstairs. A green Mini Cooper was parked outside the duplex, which the tipster said Hueston owned.

At some point that day, Detective Ross retrieved the tipster's records in the local Grant County database and found

an arrest for theft in 2015. Sometime after Hueston's arrest, Detective Ross ran a full background check on the tipster and discovered convictions for theft and domestic battery, as well as misdemeanor arrests.

The day after meeting the tipster, the detectives began electronic and in-person surveillance of Hueston's apartment. A pole camera recorded the back of the duplex throughout the day; the detectives conducted visual surveillance of the front entrance during the afternoon and evening hours with a brief break for dinner. The detectives observed about 30 people enter the building during this time. A few cars also came and went, including the Mini Cooper, which was driven by a woman. After running the plates on that Mini Cooper, the detectives discovered they belonged on a 2012 Hyundai owned by a woman.

That evening, the detectives attempted to apprehend a blue car that had parked for a few minutes near Hueston's apartment; the detectives believed the car's occupants had gone into Hueston's apartment. After an unsuccessful attempt to stop the car, Detectives Ross and Smith returned to the stakeout.

Later that night, a man parked a black truck outside the building and entered the duplex. Although the detectives did not see him enter the interior door to Hueston's apartment, Detective Smith could see the only other interior door leading to the downstairs apartment, which he did not use. They inferred, then, that the man must have gone to Hueston's apartment. When the driver returned to the truck and drove away, a Grant County Sheriff's Deputy pulled him over for a traffic violation and found methamphetamine, other drugs, and a

scale. Sometime later—it is not clear when—that man was identified as a known drug dealer.

**B. Affidavit and Search Warrant**

After the discovery of drugs in the black pickup truck, Detective Smith continued surveillance on Hueston's apartment and Detective Ross left to draft an affidavit in support of a search warrant for the apartment. Detective Ross discussed the case with a local prosecutor, drafted the affidavit, and received the prosecutor's approval on the written affidavit before submitting it to the issuing judge.

The affidavit included no information about the tipster other than noting the receipt of his initial tip; it did not indicate that the tipster's identity was known to police or that he had met with detectives who recorded their conversation.[1] It did not mention the tipster's drug addiction or arrest history known to Detective Ross at the time. Although it stated that the detectives had been told Hueston had drugs and guns in his apartment, it did not indicate the tipster had firsthand knowledge of this information. The affidavit included the tip about the Mini Cooper but did not disclose that the detectives only observed a woman driving the car or that it was not registered to Hueston. It also incorrectly stated that the driver of the black truck "was observed walking out of the residence," even though the detectives did not specifically observe him enter or exit the interior door leading to Hueston's apartment.

---

[1] Although Hueston argues that the affidavit also omitted the fact that the tipster was paid for the information he provided, the detectives testified that they only decided to pay the tipster after the successful raid on Hueston's apartment. Consequently, the fact of payment could not have been included in the affidavit.

The affidavit included other details gleaned from the investigation, including foot and vehicle traffic and the contents of the black pickup truck, which tests revealed to be methamphetamine, opiates (including fentanyl), and marijuana.

Based on the affidavit, an Indiana Superior Court magistrate judge issued a search warrant for Hueston's apartment, which the detectives executed later that night. They found Hueston in the apartment, as well as thousands of dollars in cash, methamphetamine, heroin, fentanyl, and a handgun and ammunition.

## C. District Court Proceedings

In April 2021, Hueston was indicted in the Northern District of Indiana for possession with intent to distribute 50 grams or more of methamphetamine and 100 grams or more of heroin, possessing a firearm in furtherance of those drug trafficking crimes, and being a felon in possession of a firearm. In September of that year, Hueston moved to suppress the evidence seized from his apartment because the supporting affidavit did not establish probable cause. Hueston also filed a motion for a *Franks* hearing. The district court granted his request for a hearing, finding the affidavit and its alleged omissions "troubling."

At the hearing, both Detective Ross and Detective Smith testified before the district court judge, answering questions on direct and cross-examination about their interactions with the tipster, the information they gathered while conducting surveillance on Hueston's apartment, and the information contained within and excluded from the affidavit. After the hearing, the district court concluded that the detectives' testimony was credible and found no reckless or deliberate

disregard for the truth, despite identifying multiple omissions and one misstatement in the affidavit. The district court found that most of the omissions were immaterial, and some would have actually bolstered probable cause, indicating a lack of deliberate intent to mislead the issuing judge.

Although the court expressed some doubt about whether the affidavit supported probable cause, it ultimately concluded that it need not answer that question because the good-faith exception to the exclusionary rule applied.

After the district court denied his motion to suppress, Hueston pled guilty and expressly reserved his right to appeal the court's suppression order. He now appeals that order.

## II. Analysis

When a district court denies a motion to suppress following a *Franks* evidentiary hearing, we review that decision and any factual findings for clear error. *United States v. Hansmeier*, 867 F.3d 807, 813 (7th Cir. 2017) (citing *United States v. Gregory*, 795 F.3d 735, 741 (7th Cir. 2015)). Factual findings include "whether the officer made statements deliberately or with reckless disregard for the truth." *United States v. Edwards*, 34 F.4th 570, 580 (7th Cir. 2022) (citing *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013)).

We review legal determinations de novo. *United States v. Woodfork*, 999 F.3d 511, 516 (7th Cir. 2021). Application of the good-faith exception is one such legal determination. *Gregory*, 795 F.3d at 741; *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009).

## A. *Franks* **Violation**

The Fourth Amendment requires probable cause for police to obtain a search warrant. U.S. Const. amend. IV. "Probable cause for issuance of a search warrant exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Woodfork*, 999 F.3d at 516 (internal quotations omitted). A "neutral and detached magistrate" must determine whether probable cause exists. *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). Because "[t]he ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit," a search warrant "is not valid if the police obtain it by deliberately or recklessly presenting false, material information, or by omitting material information from the affidavit provided to the issuing judge." *Woodfork*, 999 F.3d at 516 (internal quotations omitted).

If a defendant can make a "'substantial preliminary showing' of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth," the defendant is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the court should suppress evidence obtained under the search warrant. *United States v. Glover*, 755 F.3d 811, 819–20 (7th Cir. 2014).

The district court then "must suppress evidence seized during a search 'when the defendant shows by a preponderance of the evidence that (1) the affidavit in support of the warrant contains false statements or misleading omissions, (2) the false statements or omissions were made deliberately or with reckless disregard for the truth, and (3) probable cause

would not have existed without the false statements and/or omissions.'" *Edwards*, 34 F.4th at 580 (quoting *Williams*, 718 F.3d at 647–48); *see also Franks*, 438 U.S. at 155–56.

Hueston argues that the district court clearly erred when it found that the detectives did not make false statements or omissions deliberately or with reckless disregard for the truth. At the *Franks* hearing where both Detective Ross and Detective Smith testified, the district court had the ability to assess their credibility. After the hearing, the judge concluded that the detectives' testimony was credible and that any misstatements and omissions in the affidavit were not intentional or reckless, findings that we defer to unless "after considering all of the evidence, we cannot avoid or ignore a definite and firm conviction that a mistake has been made." *Edwards*, 34 F.4th at 580–81 (quoting *United States v. Hammond*, 996 F.3d 374, 383 (7th Cir. 2021)).

We agree with the district court that the affidavit is lacking. Certain details should have been included in the affidavit, such as information about the tipster's identity and the Mini Cooper's registration. The affidavit did not give a full picture of the investigation and fell short of what we expect from an investigating officer.

The district court did not, however, clearly err by crediting the detectives' explanations and finding that they did not act with recklessness or a deliberate intent to mislead the issuing judge. *Cf. United States v. Spears*, 673 F.3d 598, 603, 605–06 (7th Cir. 2012) (finding no clear error where the district court credited officers' testimony and no information in the record showed that credibility determination to be an error). The affidavit's misstatements and omissions were unwise—even sloppy—but the evidence in the record does not

unequivocally show the detectives, including Detective Ross as the author of the affidavit, intended to mislead the issuing judge.

Two examples are illustrative. Detective Ross testified that he did not disclose the tipster's drug addiction because despite his drug use, the tipster appeared to be of "sound mind" and was not under the influence of drugs when he met with the detectives. The record gives us no reason to believe that the judge clearly erred in crediting that testimony. Similarly, although Detective Ross did not disclose the tipster's arrest history in the affidavit, the district court found his explanation for this omission reasonable when he testified that he disclosed the 2015 theft arrest to the prosecutor and that crimes of dishonesty more than five years old did not typically alter an informant's credibility.

The district court's credibility determination is especially reasonable because Detective Ross left out both helpful and unhelpful facts. It is difficult to discern an intent to mislead—rather than mere carelessness—since much of the omitted information would have reinforced the affidavit. Many omitted facts would have bolstered probable cause by establishing the tipster's credibility, including the fact that he met with the detectives, that they recorded the conversation, and that the tipster personally observed drugs in Hueston's apartment and purchased drugs from him just three or four days before talking to the detectives. As further evidence of good intent,

Detective Ross also consulted with the prosecutor before and after drafting the affidavit.[2]

Considering the helpful information the detectives omitted from the affidavit and Detective Ross's consultation with the prosecutor both before and after drafting the affidavit, the district court reasonably concluded after hearing his testimony and assessing his credibility that Detective Ross did not intend to mislead the issuing judge. Remaining inadequacies do not firmly convince us that the district court committed clear error here. We therefore affirm the district court's finding that no *Franks* violation occurred.

**B. Good-Faith Exception**

Hueston faces another hurdle: the good-faith exception sometimes forgives reliance on a flawed warrant. The good-faith exception responds to "the substantial societal costs of the [exclusionary rule]," when wrong-doers go free because of the exclusion of relevant and probative evidence. *United States v. Mitten*, 592 F.3d 767, 770 (7th Cir. 2010). Consequently, the "suppression of evidence is not an appropriate remedy when the officers who obtained the evidence did so in good faith reliance upon a facially valid warrant issued by a magistrate or judge." *Id.* The very decision to obtain a warrant "creates a presumption that the

---

[2] At oral argument, Hueston argued that the prosecutor's approval should not carry weight because that approval is only as good as the information police disclose to the prosecutor. But Detective Ross did reveal the tipster's identity to the prosecutor. Under these circumstances, consultation with and disclosures to the prosecutor counsel against finding an intent to mislead.

officer acted in good faith." *United States v. Yarber*, 915 F.3d 1103, 1106 (7th Cir. 2019).

A defendant can rebut this good-faith presumption "by demonstrating that the issuing judge failed to perform his neutral and detached function and served as a rubber stamp for the police; that the officer was dishonest or reckless in preparing the affidavit; or that the affidavit was so lacking in probable cause that no officer could have reasonably relied on it." *Bell*, 585 F.3d at 1052 (citing *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008)); *see also United States v. Leon*, 468 U.S. 897, 923 (1984).

Hueston has failed to present evidence that the issuing judge was not acting in a neutral and detached way. Nor can Hueston overcome the presumption of good faith by showing dishonesty or recklessness since we have already concluded that Detective Ross did not commit a *Franks* violation. And the affidavit's deficiencies were not so egregious as to alert any reasonable officer to any lack of probable cause, particularly in light of the detective's consultation with the prosecutor before and after drafting the affidavit.

Because Hueston has not overcome this heavy presumption, we affirm the district court's finding of good faith. As the district court correctly noted, because the good-faith exception applies, we need not decide whether the affidavit is supported by probable cause. *See Woodfork*, 999 F.3d at 519.

### III. Conclusion

Because the district court reasonably found the detectives' testimony credible and because the good-faith exception applies, we affirm its denial of Hueston's motion to suppress.

\*       \*       \*

The judgment of the district court is

AFFIRMED.