In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3806

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LC BELL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 CR 20027—**Michael P. McCuskey**, *Chief Judge*.

ARGUED SEPTEMBER 17, 2008—DECIDED NOVEMBER 5, 2009

Before MANION, WOOD, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* After receiving information from confidential informants indicating that LC Bell was involved in the sale of crack cocaine, law enforcement officers from the East Central Illinois Task Force obtained and executed a warrant to search Bell's residence. There, they found crack cocaine and two handguns. Bell moved to suppress the evidence obtained during the search, arguing that the warrant was not supported by

probable cause. The district court concluded that although a close call, the affidavit submitted in support of the search warrant established probable cause. We disagree. Because the affidavit failed to establish the reliability of the informants, and the law enforcement officers did not sufficiently corroborate the informants' reports, the warrant was not supported by probable cause. Nevertheless, the evidence is admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984). Therefore, we affirm the district court's denial of Bell's motion to suppress. However, we order a limited remand for the district court to determine if it would have issued a different sentence in light of its new-found discretion under *Kimbrough v. United States*, 128 S. Ct. 558 (2007).

## I. BACKGROUND

For several months, Inspector Jeff Endsley and other agents from the East Central Illinois Task Force conducted an investigation into the sale of crack cocaine in Coles County, Illinois. During this investigation, they arrested several individuals, some of whom identified Bell as someone involved in the sale and delivery of crack cocaine. Inspector Endsley also received similar reports from other individuals who were acting as "confidential sources" for the task force.

Sometime later, an informant referred to as Rob Hale (an assumed name) told Inspector Endsley that he had "just left" Bell's residence, where he saw an undisclosed amount of crack cocaine in two plastic bags and a large

sum of cash on a table in the living room. Hale said that he was able to identify the substance on the table because he had seen crack cocaine before and he "was aware of what [it] looked like." Hale described the location of Bell's apartment as "the only apartment on the east end of the building at 1601 9th street in Charleston, Illinois" and mentioned that, on previous occasions, he had seen crack cocaine there along with a handgun concealed underneath the couch. Hale also stated that Bell had threatened to physically harm others with the gun and had loaned the gun to others to threaten people. Inspector Endsley checked Bell's criminal history and verified that Bell had previous arrests and convictions for armed robbery and for violations of the Illinois Controlled Substances Act.

Shortly after speaking with Hale, Inspector Endsley submitted an affidavit to a Coles County Circuit Court judge containing all of the information gathered during the investigation. The judge issued a "no knock" warrant to search Bell's apartment, and, on February 22, 2007, officers from the task force (led by Inspector Endsley) executed the search warrant for Bell's residence. There they recovered 36 grams of crack cocaine and two handguns. As a result, Bell was charged with knowingly possessing five grams or more of a mixture and substance containing cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and with unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Bell filed a motion to suppress the evidence obtained from his apartment, which the district court denied. On June 26, 2007,

Bell pled guilty to possession of more than five grams of cocaine base with intent to distribute and possession of a firearm by a felon, but reserved the suppression issue for appeal. The district court sentenced Bell to 150 months' imprisonment and eight years of supervised release on the drug count, and 120 months' imprisonment and three years of supervised release on the firearm count, to run concurrently. Bell now appeals the denial of his motion to suppress the evidence seized from his apartment.

## II. ANALYSIS

### A. No Probable Cause

An affidavit establishes probable cause to support a search warrant when it sets forth sufficient evidence to convince a reasonable person that a search will uncover evidence of the alleged crime. *United States v. Carmel*, 548 F.3d 571, 575 (7th Cir. 2008). When, as here, the affidavit is the only evidence provided to the judge in support of the search warrant, the validity of the warrant rests solely on the strength of the affidavit. *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003).

Further, when an informant supplies the facts in the affidavit, the probable cause determination will also turn on the informant's credibility. *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). Some of the factors to consider in making this determination are: (1) the extent to which police corroborated the informant's statements; (2) the degree to which the informant acquired

knowledge of the events through first-hand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant. *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002). We also consider whether the informant personally appeared and testified before the issuing judge, thus allowing the judge to assess his credibility. *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008). No one factor is dispositive, so a deficiency in some areas can be compensated by a stronger showing in others. *United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) (citing *United States v. Brack*, 188 F.3d 748 (7th Cir. 1999)).

Ultimately, the issuing judge must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We must afford great deference to the issuing judge's determination, but we review de novo the district court's legal conclusion that the warrant was supported by probable cause. *United States v. Millbrook*, 553 F.3d 1057, 1061 (7th Cir. 2009).

Inspector Endsley's affidavit relies heavily on Hale's accounts, stating, in part, that Hale saw crack cocaine on a living room table and that he also described the location of Bell's apartment. Still, the affidavit fails to provide any information to establish Hale's reliability.

The affidavit did not indicate whether Hale had provided information to law enforcement in the past, *see, e.g.*, *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (noting that although officer's monitoring of informant during controlled buy was imperfect, informant's history of providing accurate and reliable information in the past was persuasive in determining whether informant's controlled buy established probable cause), nor did it give any information about the nature of Hale's relationship with Bell. In other words, we have no idea how Hale and Bell knew each other or what Hale was doing at Bell's apartment. For all we know, Hale could have been a rival drug dealer, an angry customer, or had some other beef with Bell, which is certainly a factor to consider when assessing the reliability of his statements. On the other hand, with additional details, a judge could have determined, based on the nature of their relationship, that Hale had reason to know what was inside Bell's apartment, which would have provided another indicator of reliability. *See Peck*, 317 F.3d at 758 ("[the informant's] relationship with [the defendant] may have made her story more credible because, as someone close to [the defendant] she was more likely to know that drugs were in the house . . . ."). Hale also did not appear before the issuing judge, which would have given the judge an opportunity to assess his credibility. *See Sims*, 551 F.3d at 644. Based on the information provided in the affidavit, we have little reason to believe that Hale, Inspector Endsley's primary informant, is reliable.

The amount of detail in the affidavit also leaves much to be desired. It gave no indication of the amount of crack cocaine in Bell's apartment, but simply relied on Hale's statement that there were two "plastic baggies" on a living room table. This could mean that Hale saw a couple of dime bags ($10 bags of drugs, which may be for personal use and are less likely to be found a day later) or a much larger stash that may have been for sale. It is also unclear how Hale was able to identify the substance on the table as crack cocaine, as all the affidavit says is that "Hale has seen crack cocaine in the past and . . . [knows] what [it] looks like." This conclusory explanation is not enough to instill confidence in an informant's observations. *See Peck*, 317 F.3d at 757 (finding that informant's statements lacked sufficient detail where informant stated that she recognized the substances as drugs based on her "personal experiences"). As for the gun under the couch, we have no idea how long it had been since Hale saw the firearm or when Bell allegedly used it to threaten others. These events may have occurred so far in the past that the information was stale and unreliable. *See United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008). As a result, the statements in the affidavit do not provide the factual foundation necessary to establish probable cause.

Further, we are not persuaded by the government's emphasis on the officers' corroborative efforts. The affidavit stated that several unidentified arrestees and "confidential sources" also implicated Bell as someone who was actively involved in the sale of crack cocaine; and

the government seems to argue that this conclusory statement about unnamed informants provides sufficient corroboration to cure the omissions in Hale's statements. *See Taylor*, 471 F.3d at 840. We disagree. The affidavit provides no additional details regarding the informants whatsoever. It does not indicate how they obtained the information, the extent of the informants' or arrestees' relationship to Bell, or even the recency of these reports. The statement about the additional informants was only a single conclusory statement about Bell's drug trafficking activities that occurred at some point in the past. It would be bootstrapping to argue that such unreliable reports sufficiently corroborate Hale's statements, especially when Hale's credibility is also in question.

The government, nonetheless, attempts to draw comparisons between Inspector Endsley's affidavit and the affidavit in *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005), where we found that the warrant was supported by probable cause. In *Olson*, the officer obtained a warrant to search the defendant's home based on a report from a "concerned citizen," the defendant's nephew's admission that he witnessed and planned to steal marijuana from the defendant's bedroom, confidential intelligence records from the State Line Area Narcotics Team, and a criminal history check disclosing a number of prior drug charges. *Id*. at 369. In assessing the sufficiency of the affidavit, we held that although the weight of each item was slight, together they sufficed to corroborate the informant's (defendant's nephew) story. *Id*. at 372.

There are indeed some similarities between the corroborative evidence offered in *Olson* and Inspector Endsley's efforts to corroborate Hale's statements. And, as we recognized in *Olson*, we must look to the totality of the circumstances because "the whole may be more than the sum of the parts when assessing probable cause." *United States v. Harris*, 464 F.3d 733, 740 (7th Cir. 2006). However, the government's comparison is a stretch because Hale's statements lack the indicia of reliability demonstrated by the primary informant in *Olson*. In that case, we knew that the informant was the defendant's nephew. *Olson*, 408 F.3d at 369. We learned that he had seen up to a pound of marijuana in the defendant's bedroom two days earlier and later returned to the defendant's house to steal his marijuana supply. *Id*. We also knew that the informant was arrested for the assault and armed robbery of the defendant; therefore, the admission of his motive to steal the defendant's marijuana was self-incriminating. *Id*. at 371. Here, the affidavit only states that Rob Hale, an assumed name, observed two bags of crack cocaine while inside Bell's apartment earlier that day, and that Hale had seen crack cocaine there in the past. The "concerned citizen report," confidential intelligence record, and criminal record check in *Olson* provided sufficient corroboration because the informant's reliable statements carried much of the load. *See Taylor*, 471 F.3d at 840 ("[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.") (citation omitted). Conversely, Hale's statements had few indicators of reliability, and Inspector Endsley's corroborative evidence was limited to a criminal record check and

conclusory statements from even more questionable informants.

The questions surrounding Hale's reliability are best answered with specifics (i.e., How does he know Mr. Bell? What was he doing at the apartment? How did he know the substance was crack cocaine? How long ago were his previous visits when he saw the handgun and crack cocaine?) or independent corroboration of the facts that Hale disclosed—and not with additional conclusory statements from unnamed sources. A few unreliable informants are not much better than one. Based on the totality of the circumstances, including the veracity and bases of knowledge of the informants, the issuing judge did not have a substantial basis for finding that the affidavit established probable cause.

## B.  Good Faith Standard Met

It is well settled that "suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause." *United States v. Watts*, 535 F.3d 650, 656-57 (7th Cir. 2008) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984)). An officer's decision to obtain a warrant is prima facie evidence that he was acting in good faith. *Leon*, 468 U.S. at 921 n.21. A defendant may rebut this evidence by demonstrating that the issuing judge failed to perform his neutral and detached function and served as a rubber stamp for the police; that the officer was dishonest or reckless in preparing the affidavit; or that

the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008).

Furthermore, police officers are "charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *Koerth*, 312 F.3d at 869. And "if a local drug task force routinely works with the federal government, it has a responsibility to learn and follow applicable legal precedent." *United States v. Mykytiuk*, 402 F.3d 773, 777-78 (7th Cir. 2005). So, it follows that where courts have held that materially similar affidavits lacked probable cause and the facts are materially indistinguishable from those of the present case, the executing officers could not have reasonably believed the warrant was valid and the good faith exception does not apply. *Koerth*, 312 F.3d at 869. We review de novo the district court's determination that an officer executed a warrant in good faith. *United States v. Woolsey*, 535 F.3d 540, 546-47 (7th Cir. 2008).

Bell does not allege, and we do not believe, that the issuing judge failed to perform his neutral detached role. Nor do we have any reason to question Inspector Endsley's motives in preparing this affidavit. Rather, Bell relies on our case law, arguing that the officers could not have reasonably relied on the warrant in good faith because the present affidavit is materially indistinguishable from those found to be deficient in *United States v. Peck*, 317 F.3d 754 (7th Cir. 2003) and *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002). The

government, on the other hand, maintains that this case is materially distinguishable from *Koerth* and *Peck*, such that reliance on the warrant was not so unreasonable as to amount to a lack of good faith.

In *Koerth*, a previously unknown informant stated that he was at the defendant's residence and witnessed 150-200 pounds of marijuana among other things. *Koerth*, 312 F.3d at 867. The informant also stated that he had purchased from the defendant in the past. *Id*. The government admitted that the affidavit did not establish probable cause and we readily accepted the government's concession because we found that the affidavit lacked an adequate factual foundation. *Id*. We noted that the affidavit did not explain the extent to which the informant had previously provided information to officers; the officer did not present the informant to testify before the warrant-issuing judge; and the officer did not take any steps to corroborate the informant's statements. *Id*. at 867-68. Nonetheless, we applied the good faith exception because, at the time, we could not point to any case holding that a materially similar affidavit based on conclusory statements from a *named* informant failed to establish probable cause. *Id*. at 870.

In *Peck*, the informant, who claimed to be the defendant's girlfriend, told police that while inside the defendant's residence, she witnessed crack cocaine and marijuana wrapped in individual packages. *Peck*, 317 F.3d at 755. The police brought the informant to the station to swear under oath that her statements were true, and also conducted a criminal record check on the defendant. *Id*.

Based on these facts, we found that the affidavit did not establish probable cause. *Id*. at 757. Our primary concerns were the lack of specific detail in the affidavit and the police's failure to corroborate the informant's statements beyond a mere criminal record check. *Id*.

Similarly, in *Mykytiuk*, an informant claimed that he and the defendant stole materials to manufacture methamphetamine and that the defendant kept the materials in vehicles parked at his residence. *Mykytiuk*, 402 F.3d at 775. We found that the informant's first-hand reports against his penal interest were not enough to establish probable cause because the officers had not presented any evidence that he was a reliable witness and the affidavit provided only one detail to support the accuracy of the informant's statements. *Id*. at 776. Again, we applied the good faith exception because, unlike prior cases, the officers provided some minimal corroboration—they found methamphetamine production materials at the informant's residence, and the informant provided some details about where the defendant stored the contraband. *Id*. at 777. Therefore, while the affidavit did not establish probable cause, it was still sufficiently distinguishable from previous cases to warrant a good faith exception.

Bell correctly points out that Inspector Endsley's affidavit contains some of the same infirmities we found in prior affidavits, namely, its reliance on conclusory statements from an informant of unknown reliability. However, the affidavit in this case also cites corroborating statements from a number of other informants—a factor

missing from *Koerth*, *Peck* and *Mykytiuk.* In addition to the details provided by Hale concerning the location of the crack cocaine, "several" arrestees and "numerous" confidential sources for the task force made accusations that were consistent with Hale's accounts. Also, a criminal record check revealed that Bell had been convicted previously for a drug-related crime. Although these additional sources fell short of establishing probable cause, they sufficiently distinguish this affidavit from those in prior cases, such that reliance on the issuing judge's ruling was not unreasonable. *Cf. United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1992) (finding that an anonymous caller's tip was substantially corroborated by information from other informants and the defendant's criminal record). In fact, the only case to which either party cites with similar corroborative evidence is *United States v. Olson*, 408 F.3d 366 (7th Cir. 2005), which provides little guidance because there we found that the warrant was supported by probable cause.

   To be clear, the corroboration offered by Inspector Endsley was insufficient. If an officer cannot demonstrate that an informant is reliable, then citing additional anonymous informants of unknown reliability does little to establish the factual foundation that we found lacking in *Koerth*. Nonetheless, the affidavit does contain some evidence that Bell possessed crack cocaine in his apartment. Furthermore, at the time Inspector Endsley executed the warrant, our case law did not provide much guidance to assess the corroborative weight of the additional reports from arrestees and confidential sources. Under these circumstances, Inspector Endsley's failure

to recognize that the warrant did not establish probable cause does not amount to a lack of good faith and the exclusionary rule is not the appropriate remedy.

## C.  Resentencing in Light of *Kimbrough*

After oral argument, we asked both parties to file statements of position to address whether this case should be remanded for resentencing in light of the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007). In *Kimbrough*, the Supreme Court held that a district court judge may take the crack/cocaine powder disparity into consideration in imposing a below-guidelines sentence, abrogating our prior case law to the contrary. *Id*. at 575. As a result, we found that a defendant who was sentenced before *Kimbrough* and did not object to the crack/powder disparity was entitled to a limited remand to allow the sentencing judge to inform us "whether [he] would be inclined to reduce [the defendant's] sentence under the dispensation granted sentencing judges by *Kimbrough*." *United States v. Taylor*, 520 F.3d 746, 748-49 (7th Cir. 2008).

Here, Bell's advisory guideline range for the drug count was 120 to 150 months, with a statutory mandatory minimum term of 120 months, and the district court judge sentenced Bell (before *Kimbrough* was decided) to 150 months' imprisonment—the top of the guideline range. The government argues that a remand is unnecessary because, it maintains, *Kimbrough* is only applicable when a sentencing court is considering a sentence outside the advisory guideline range, and the mandatory

minimum of 120 months prevented the district court judge from issuing a below-guideline sentence. According to the government, nothing in this court's precedent before *Kimbrough* forbade consideration of the disparity in fixing the appropriate sentence within the guideline range, and the decision in *Kimbrough*, therefore, has no impact on Bell's sentence.

We disagree with the government's interpretation of our precedent. Prior to *Kimbrough*, we held that district court judges were required to implement the 100-to-1 ratio, and could not impose a below-guidelines sentence based on disagreements with the crack/powder disparity because it was created by legislative decision. *See United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006), *abrogated by Kimbrough v. United States*, 128 S. Ct. 558 (2007). This ruling essentially made a disagreement with the crack/powder disparity an improper factor for *any* sentencing decision, whether within or below the guidelines, on the grounds that it would amount to a rejection of congressional policy. There is no reason why a disagreement with congressional legislation would be impermissible when issuing a below-guidelines sentence but permissible when sentencing within the guidelines range.

*Kimbrough* clarified that a policy disagreement with the crack/powder disparity was not an impermissible factor, and this clarification is relevant to courts issuing below and within-guidelines sentences alike. *Cf. United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008) (remanding for resentencing in light of *Kimbrough* where the sentencing judge issued an *above-guideline* sentence); *see*

*also United States v. Dunn*, 281 Fed. Appx. 603, 605 (7th Cir. 2008) (recognizing that a defendant could argue that the sentencing court should have taken *Kimbrough* into account when it issued a sentence within the guideline range but 10 months longer than the statutory minimum). From the sentencing hearing transcripts, it is unclear whether the district court judge would have imposed the same sentence or a sentence on the lower end of the guidelines range if he were able to consider the crack/powder disparity when applying the 18 U.S.C. § 3553(a) factors. Accordingly, a limited remand is appropriate to allow the sentencing judge to inform us whether he would resentence Bell in light of *Kimbrough*.[1]

---

[1] The government also argues that Bell failed to raise the *Kimbrough* issue in his briefs, and arguments raised for the first time in oral argument or in supplemental filings are waived. *United States v. Conley*, 291 F.3d 464, 468 n.3 (7th Cir. 2002). However, we maintain the discretion to notice errors on our own initiative, even when unassigned by either party. *See, e.g., United States v. Olano*, 507 U.S. 725, 736 (1993) ("[I]n criminal cases, where life, or . . . the liberty, of the defendant is at stake, the courts of the United States, in the exercise of a sound discretion, may notice [forfeited error]."); *United States v. Schnell*, 988 F.2d 216, 219 (7th Cir. 1992). We requested the parties to file supplemental briefs on the issue, and, in light of the lengthy sentences at stake, we address it on the merits, as we did in *United States v. Harris*, 536 F.3d 798, 812 (7th Cir. 2008).

### III. CONCLUSION

For these reasons, we AFFIRM the district court's ruling and we issue a LIMITED REMAND to allow the district court to determine whether it would have issued a different sentence light of *Kimbrough*.