In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3070

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHAD HANSMEIER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 15-cr-30024 — **Sue E. Myerscough**, *Judge.*

ARGUED MAY 16, 2017 — DECIDED AUGUST 14, 2017

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Police officers searched Chad Hans-
meier's home based on a search warrant and found various
drug-dealing paraphernalia. He was arrested and charged.
After the district court denied Hansmeier's motions to sup-
press the evidence of the search, he pled guilty to conspiracy
to distribute methamphetamine, heroin, and marijuana, while
reserving the right to appeal the court's denial of his motions
to suppress.

On appeal, Hansmeier argues that the evidence must be suppressed because the affidavit filed in support of the search warrant did not establish probable cause and contained material falsehoods and omissions. We disagree and affirm.

## I. BACKGROUND

Illinois law-enforcement officers arrested Jason Walker after making two controlled buys of methamphetamine from him. During an interview the night of his arrest, Walker told West Central Illinois Agent Nicholas Hiland that Hansmeier was his drug source; that Hansmeier lived in Missouri; and that Hansmeier dealt large quantities of methamphetamine, heroin, and marijuana.

At about 1:15 in the morning, after Walker was arrested, Agent Hiland called Special Agent Michael Murphy of the Northeast Missouri Narcotics Task Force. Agent Murphy and Agent Austin Snow (another member of the Task Force) then drove to Illinois to talk to Walker. They were familiar with Hansmeier and were interested in any information that Walker could give them.

Walker told Agent Murphy and Agent Snow that he had bought large quantities of methamphetamine from Hansmeier over the past several months. Walker agreed to show the agents where Hansmeier lived and successfully directed the officers to Hansmeier's house. The agents then dropped off Walker back at the Illinois police station and returned to their offices in Missouri.

There, Agent Murphy continued his investigation by running background checks on Walker and Hansmeier on a website called case.net. Although case.net provides only a "snapshot" of a person's criminal history, Agent Murphy learned

that both men were on parole and that Hansmeier had several criminal convictions, including one for a drug-distribution-related offense.

Agent Murphy then began drafting an affidavit in support of a no-knock search warrant for Hansmeier's house, relying heavily on the information that Walker had provided. In the affidavit, Agent Murphy included the following facts:

- Walker had directed the agents to Hansmeier's house;
- Walker had been to Hansmeier's house eighteen times over the previous six months and had been buying methamphetamine from Hansmeier for several months;
- Walker had been buying four ounces of methamphetamine from Hansmeier at least once and usually twice a week and had bought methamphetamine from Hansmeier just a few days earlier;
- Walker knew the prices that Hansmeier charged, including that Hansmeier would occasionally front the drugs;
- Hansmeier kept a supply of methamphetamine, marijuana, and heroin in his house and always had methamphetamine for Walker;
- Hansmeier had a large stack of drug money at his house the last time that Walker was there; and
- Hansmeier recently told Walker that he had received a large shipment of methamphetamine because he was going on vacation in a few weeks.

Agent Murphy also noted that he was familiar with Hansmeier from previous investigations and that another confidential informant had told him about Hansmeier's drug-dealing scheme. Finally, Agent Murphy included in the affidavit

the little information that he had on Hansmeier's criminal history.

In support of the no-knock aspect of the warrant, Agent Murphy informed the court that Walker had told the agents that Hansmeier had video surveillance at his house. Agent Murphy also reported that, during a previous investigation, Hansmeier had flushed drugs down the toilet when officers knocked and announced their intent to search his home.

A Missouri state-court judge signed the warrant at 9:05 the morning after Walker had been arrested. When executing the warrant, officers found a loaded gun, marijuana, a large amount of cash, drug paraphernalia, and about 200 grams of a powdery substance that they believed to be either a cutting agent or methamphetamine mixed with a cutting agent. Officers subsequently arrested Hansmeier.

The government charged Hansmeier, which generated a case numbered 13-cr-30042 ("2013 case"). A grand jury returned an indictment against Hansmeier, charging him with conspiracy to distribute methamphetamine, heroin, and marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)–(b)(1)(D).

Hansmeier moved to suppress the evidence discovered during the search of his house. Among other arguments, Hansmeier claimed that the affidavit did not support probable cause because Agent Murphy had relied on an untested, newly arrested confidential informant's uncorroborated statements. The district court denied the motion, holding that the affidavit supported probable cause. The court alternatively held that, even if the affidavit did not support probable cause, the officers had relied on the warrant in good faith.

Hansmeier then filed an amended motion to suppress. After two evidentiary hearings, the court denied that motion for the same reasons it had denied Hansmeier's first motion.

After the court dismissed Hansmeier's motions, Hansmeier and the government entered a plea agreement. Under the agreement, the government charged Hansmeier of the same crime as in the 2013 case, omitting only the penalty provision in § 841(b)(1)(A). This created a second case, numbered 15-cr-30024 ("2015 case").

Hansmeier pled guilty in the 2015 case under a written plea agreement, but he reserved the right to appeal the court's denial of his motions to suppress in the 2013 case. At sentencing, the court dismissed the 2013 case and entered judgment in the 2015 case. This appeal followed.

## II. ANALYSIS

### A. Probable-Cause Analysis

We first address Hansmeier's claim that the affidavit did not support probable cause to search his home. Hansmeier argues that Agent Murphy relied on information from Walker—an untested, newly arrested confidential informant—without adequately corroborating his story. That lack of corroboration, Hansmeier contends, dooms the search warrant.

In cases where a warrant has issued, as here, we give great deference to the issuing judge's decision that "the facts add up to 'probable cause.'" *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause … ."). We will affirm if "substantial evidence in the record"

supports the issuing judge's conclusion. *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (quoting *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008)).

When an affidavit is the only evidence presented to a judge in support of a search warrant, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). And when an informant serves as the source of information in an affidavit, the probable-cause determination turns on the informant's credibility. *Id.* To evaluate an informant's credibility, we consider "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014).

To start, Agent Murphy corroborated more of Walker's story than Hansmeier is willing to admit. For instance, Walker told the officers that he had bought methamphetamine from Hansmeier at Hansmeier's house. Walker then successfully directed the officers to where Hansmeier lived.[1] This did not verify Walker's claim that Hansmeier was dealing drugs, but

---

[1] Hansmeier also argues that a better investigation of the house during the drive-by would have shown Walker to be unreliable: there were no surveillance cameras at Hansmeier's house like Walker claimed there were. A probable-cause determination is based on the facts as they stand at the time the decision is made. Facts later discovered cannot support probable cause; nor can they detract from it. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). If Agent Murphy intentionally or recklessly included Walker's false statement about the cameras in the affidavit, Hansmeier should have raised that issue in his *Franks* argument discussed in Part B below. *Franks v. Delaware*, 438 U.S. 154 (1978).

it is important in gauging Walker's overall credibility as an informant. *See United States v. Dismuke*, 593 F.3d 582, 588 (7th Cir. 2010), *abrogated on other grounds by United States v. Miller*, 721 F.3d 435 (7th Cir. 2013).

Agent Murphy also corroborated Walker's story in three other ways. First, Agent Murphy stated that he was familiar with Hansmeier from previous investigations. Second, Agent Murphy's background check on Hansmeier uncovered that Hansmeier had been convicted of at least one drug-distribution-related offense in the past; although the record check does not corroborate Walker's story alone, "it does retain some corroborative value." *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005). And third, Agent Murphy included in the affidavit a detailed recollection of Hansmeier's drug dealing from an unnamed confidential informant, which counts as "slight" corroboration. *See id.* at 371.

Admittedly, those facts are not enough alone to find Walker credible. But they are, to an extent, indicators of credibility. And any additional steps that Agent Murphy could have taken to corroborate Walker's story do "not in any way detract from what was done." *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000).

In any event, Hansmeier's emphasis on corroboration alone is misplaced: no one factor is determinative in weighing an informant's credibility. A weakness in one may be offset by the strength of others. *Bell*, 585 F.3d at 1049.

And here, the other factors strongly support Walker's credibility. Walker's information was detailed: he knew the type of drugs that Hansmeier dealt, the quantity that he could get from Hansmeier, and the price that Hansmeier charged.

Walker's information was based on firsthand knowledge. And Walker's information was based on recent observation: he had seen drugs and drug money in Hansmeier's house and bought methamphetamine from Hansmeier just a few days before he spoke with Agent Murphy (to say nothing of the fact that Walker bought drugs from Hansmeier weekly, who always had a supply).

Still more facts bolster Walker's credibility. His statements were unimmunized and against his penal interest: he admitted buying 4 ounces of methamphetamine twice a week from Hansmeier, far more than the sixty-eight grams that police caught him with. *United States v. Leidner*, 99 F.3d 1423, 1429–30 (7th Cir. 1996). And although Walker was a newly arrested informant, which subjects him to greater scrutiny, s*ee Olson*, 408 F.3d at 370, the issuing judge was entitled to conclude that Walker's recent arrest gave him an incentive to supply the police with accurate information in hopes of receiving lenient punishment for his own crimes. *See Koerth*, 312 F.3d at 870. Finally, the issuing judge was aware that the officers knew who Walker was (that is, he was a confidential informant as opposed to an anonymous tipster), meaning that the officers could find him and hold him responsible if he gave misleading information—yet another check on credibility. *Id.* at 871.

The only factor that doesn't favor Walker's credibility is that he didn't appear before the issuing judge. But that is the absence of just one of many factors used to evaluate an informant's credibility; the others all tend to favor Walker.

Thus, substantial evidence in the record supports the issu-ing judge's probable-cause determination.[2]

*B.* Franks *Suppression*

Hansmeier next contends that the evidence must still be suppressed because the affidavit contained material false-hoods and omissions. In *Franks v. Delaware*, the Supreme Court held that defendants may challenge the truthfulness of statements made in an affidavit supporting a search warrant. 438 U.S. 154, 155–56 (1978). Evidence will be suppressed if "(1) the affidavit contained material false statements or omissions; (2) these false statements or omissions were made with delib-erate or reckless disregard for the truth; and (3) these false statements or omissions were necessary to a finding of prob-able cause." *United States v. Gregory*, 795 F.3d 735, 743 (7th Cir. 2015) (citing *Franks*, 438 U.S. at 155–56).

After a *Franks* evidentiary hearing, we review a district court's factual findings and decision to deny a defendant's motion to suppress for clear error. *Id.* at 741.

Hansmeier relies on two facts for his argument. First, Walker told Agent Murphy that he had been to Hansmeier's house eighteen times over the previous six months, and Agent Murphy included that fact in the affidavit. As the gov-ernment concedes, that statement is at best misleading. Both Hansmeier and Walker had been out of jail and on parole for less than six months. Walker's claim that he had been to Hans-meier's house over a six-month period thus overstated the length of their relationship. Had Agent Murphy done a more

---

[2] Because the affidavit here established probable cause, we don't need to address Hansmeier's argument that the officers could not have relied on the warrant in good faith.

detailed background check on Hansmeier and Walker, he would have discovered the discrepancy in Walker's timeframe.

Second, in support of the no-knock aspect of the warrant, Agent Murphy stated that Hansmeier had flushed drugs down the toilet when officers knocked and announced their presence while executing a search warrant years earlier. Agent Murphy obtained that information from Captain Patti Talburt. But Captain Talburt's memory of that incident, which occurred in 2004, was flawed. What actually happened was that, during a search of Hansmeier's house, officers found drug residue in his toilet and drug paraphernalia and bags in a sewer that only Hansmeier's house was connected to. Hansmeier wasn't home when the officers executed the warrant. Had Agent Murphy checked the report instead of relying only on Captain Talburt's memory, he would have discovered what had actually happened.

Although the affidavit contained false information, we need not suppress the evidence. "[A]n affiant acts with reckless disregard for the truth when he or she 'in fact entertained serious doubts as to the truth of his allegations.'" *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008) (quoting *United States v. A Residence Located at 218 Third Street, New Larus, Wis.*, 805 F.2d 256, 258 (7th Cir. 1986)). Negligence is not enough to justify suppressing evidence. *Id.* Moreover, "a *Franks* violation based on an omission requires a showing that the material information was omitted deliberately or recklessly *to mislead* the issuing magistrate." *Williams*, 718 F.3d at 650.

There is nothing in the record to support the conclusion that Agent Murphy entertained serious doubts about the

truth of the affidavit or deliberately or recklessly attempted to mislead the issuing judge.

Based on the limited background check from case.net, Agent Murphy knew that both Walker and Hansmeier were on parole; he had no reason to believe that they had been released within the previous six months. And he did not try to hide the limited nature of the background check from the issuing judge: he stated that Hansmeier had been released "within the past year"; that Hansmeier had "at least one prior conviction for distribution of a controlled substance"; and that he used case.net, which omitted at least one prior conviction. (App. R. 15-2 at 140, 142.) At no point did Agent Murphy embellish the information that he had.

Nor did Agent Murphy entertain serious doubts about Captain Talburt's story that Hansmeier had tried to flush drugs when officers executed a search warrant nine years earlier. In related situations, we have held that an officer is "entitled to rely on the collective knowledge of all the investigating officers in making out his warrant request." *Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591, 597 (7th Cir. 2009).

And even more to the point on suppression, Hansmeier cannot show that information about the flushing incident was necessary to the probable-cause finding. *See Gregory*, 795 F.3d at 743. Hansmeier contends that, because the incident related to a different drug investigation, it likely altered the issuing judge's probable-cause determination. Maybe. But the only inaccuracy in the affidavit was the timing of when Hansmeier flushed the drugs. The underlying events all occurred. At worst, the warrant would have issued anyway but without the no-knock allowance. And evidence is not suppressed

when officers violate the knock-and-announce rule. *Hudson v. Michigan*, 547 U.S. 586, 599 (2006).

Thus, Hansmeier has not met his burden for suppression under *Franks*.

### III. CONCLUSION

For those reasons, the district court's decision is AFFIRMED.