In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-1352

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD R. FELTON,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 19-cr-30035 — **Sara Darrow**, *Chief Judge*.

———————————

ARGUED APRIL 16, 2024 — DECIDED NOVEMBER 25, 2025

———————————

Before ST. EVE, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

PRYOR, *Circuit Judge*. On June 2, 2022, a jury found Donald Felton guilty of possessing with intent to distribute fifty grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). The district court sentenced Felton to 240 months' imprisonment followed by ten years of supervised release. Felton does not appeal any aspect of his jury trial, but he challenges the district court's denial of his motion

to suppress and in the alternative for a *Franks* hearing. For the reasons stated below, we reverse the denial of Felton's motion to suppress and remand for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

## I.   BACKGROUND

### A.  Factual Background

#### 1.  *Investigation*

On May 21, 2019, two law enforcement officers interviewed a confidential source. The confidential source told the officers that Donald Felton had made several trips to St. Louis, Missouri, to purchase methamphetamine for resale in Taylorville, Illinois. The confidential source informed the officers that Felton would be making another run soon. According to the confidential source, Felton would be driving a white SUV belonging to his girlfriend, Kourtneigh Oats. The confidential source also told the officers that Felton had been pulled over on a similar drug run about two weeks earlier. During that encounter, according to the confidential source, police found a "starter pistol" in the vehicle, after which Felton abandoned his trip to St. Louis. The confidential source indicated Felton would purchase two to three ounces of methamphetamine on each trip.

After the interview, Inspector Sheriff Jeffrey Brown, assigned to the Illinois State Police, Central Illinois Enforcement Group, set out to corroborate the confidential source's information.[1] Inspector Brown was already familiar with Felton

---

[1] Brown is a deputy sheriff with the Christian County (Illinois) Sheriff's Office and holds the rank of Inspector with the Central Illinois Enforcement Group.

because, in April 2017, he had arrested and charged Felton with drug possession after finding methamphetamine and drug paraphernalia in the home Felton shared with Oats. Inspector Brown also knew that Oats had a white Mazda SUV because on May 16, 2019—days before the informant's interview—Inspector Brown drove past Felton's home and observed the vehicle in the driveway. It was registered to Oats.

To further corroborate the source's information, Inspector Brown pulled police department records from April 21, 2019. According to this documentation, at around 10:45 p.m. on April 21, 2019, Deputy Goebel encountered Felton in a car registered to Kourtneigh Oats on Illinois Route 48.

On May 22, 2019, Inspector Brown spoke with Deputy Goebel, who confirmed the April report. Deputy Goebel also stated that he saw a "handgun which only shot blanks" and a "wad" of cash he estimated to be around $2,000 in the vehicle (though he did not count the bills himself). According to Deputy Goebel, Felton claimed to be traveling to Mattoon, Illinois, and the money was to purchase a smoker.

### 2. *Affidavit and Search Warrant*

Relying on this information, Inspector Brown presented an affidavit in support of a search warrant to Judge Brad Paisley of the Circuit Court of Christian County, Illinois. The judge issued the warrant and authorized the police to install an electronic tracking device on the white Mazda SUV. The affidavit outlined the facts provided by the confidential source, Inspector Brown's corroborative efforts, and Felton's criminal history. The affidavit mentioned tersely that the confidential source had "provided information which has proven

to be reliable on a number of occasions" and that the source "has a criminal history with a felony conviction for burglary."

But the affidavit omitted key details concerning the confidential source's credibility. Critically, the affidavit did not mention that the confidential source was paid $345 for his information concerning Felton; nor did it explain that, since 2013, the source had been cooperating with law enforcement in exchange for consideration in his pending cases and those of his friends. The affidavit also did not explain that at the time of the confidential source's interview concerning Felton, law enforcement had discovered suspected methamphetamine in the source's residence, and that the source may have believed that he would not be charged if he continued to assist in the Felton investigation. The affidavit also omitted additional details about the source's criminal history, including his eight arrests and four convictions for driving with a suspended license, one arrest for resisting arrest, one conviction for interfering with judicial proceedings, and one conviction for assault. The confidential source also had a pending possession of methamphetamine charge, which was not disclosed in the affidavit.

Without this additional information, Christian County Judge Paisley issued the search warrant and authorized the installation of the surveillance tracking device on May 23, 2019.

Inspector Brown located the Mazda SUV in Felton's driveway and installed the tracking device on June 5, 2019. Three days later, the device alerted Inspector Brown that the Mazda had left Taylorville and was heading southwest on Route 48 toward St. Louis. When the Mazda returned to Christian County, Inspector Brown arranged for a traffic stop—with the

Taylorville K-9 unit assisting—because the vehicle's front license plate was missing. Officers initiated the stop and Felton was driving. During the traffic stop, the K-9 alerted to the presence of drugs in the Mazda. A search of the vehicle by law enforcement revealed a plastic bag filled with a substance that later tested positive for methamphetamine.

## B. Procedural Background

On July 9, 2019, a federal grand jury indicted Felton for possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). Felton moved to suppress the drugs retrieved from the Mazda, arguing that the search warrant was insufficient to support probable cause because it failed to disclose information about the confidential source's credibility. He also maintained that the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984) did not apply. In the alternative, Felton requested a *Franks* hearing to determine whether Inspector Brown intentionally or recklessly included materially false statements or omitted material information from the warrant affidavit.

The district court denied Felton's motion to suppress and his request for a *Franks* hearing. Although the government conceded that the affidavit should have included more details about the informant's credibility, the district court concluded that the confidential source's information was sufficiently detailed as to Felton's criminal activity and this information was corroborated by law enforcement. A *Franks* hearing was not warranted in the district court's view because Felton had failed to make a substantial preliminary showing "that any falsehood or omission regarding the nature of the April 2019

encounter was material to Judge Paisley's finding of probable cause."[2] Felton appeals.

## II.   ANALYSIS

### A.  Standard of Review

For a motion to suppress, "we review legal conclusions de novo and factual findings for clear error." *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014). Similarly, we review a district court's decision on whether to order a *Franks* hearing for clear error, but we review de novo any legal determinations that factored into that decision. *United States v. Bell*, 925 F.3d 362, 372 (7th Cir. 2019).

### B.  Legal Background

The Fourth Amendment prohibits "unreasonable searches." U.S. CONST. amend. IV. Warrantless searches are "per se unreasonable … subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Installing a tracking device on a vehicle is a

---

[2] Felton also argued that suppression was warranted because the officers failed to install the tracking device within ninety-six hours of the warrant's issuance, in violation of Illinois law, 725 ILL. COMP. STAT. 5/108-6, or within ten days, in violation of the Federal Rules of Criminal Procedure, FED. R. CRIM. P. 41(e)(2)(C)(i). But "foibles in the administration of Rule 41" are not grounds for suppression under the Fourth Amendment. *United States v. Trost*, 152 F.3d 715, 722 (7th Cir. 1998) (quoting *United States v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987)). Neither are violations of state law. *United States v. Brewer*, 915 F.3d 408, 414 (7th Cir. 2019) ("If … law enforcement executes a state-issued warrant beyond the limits of state law, the search may nevertheless comply with the Fourth Amendment."); *Virginia v. Moore*, 553 U.S. 164, 168, 178 (2008). For these reasons, we will not address this argument further.

search, *United States v. Jones*, 565 U.S. 400, 404 (2012), so officers must obtain a search warrant before installing such a device. Search warrants must be supported by probable cause, which exists "if there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hueston*, 90 F.4th 897, 902 (7th Cir. 2024) (citation omitted). We give great deference to an issuing judge's probable cause determination. *Glover*, 755 F.3d at 816 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

### C. Probable Cause for the Search Warrant

As is the case here, when a warrant affidavit relies primarily on the reports of a confidential source, the existence of probable cause is based on the totality of the circumstances. *Gates*, 462 U.S. at 238. We have identified five primary factors, along with other pertinent concerns, that inform this inquiry: (1) the level of detail the informant provided; (2) the extent of the informant's firsthand knowledge; (3) the degree to which the information has been corroborated; (4) the time between the events reported and the warrant application; and (5) whether the informant appeared before the magistrate judge. *Bell*, 925 F.3d at 371 (citing *United States v. Musgraves*, 831 F.3d 454, 460 (7th Cir. 2016)).

None of the aforementioned factors, however, are dispositive. Instead, "the issuing judge must make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009) (internal quotations omitted) (quoting *Gates*, 462 U.S. at 238).

Felton argues that Inspector Brown's affidavit provided an insufficient basis for the warrant because it (1) rested almost entirely on the word of a source who provided no details about his relationship with Felton, (2) lacked detail of the source's relationship with Felton, (3) provided no basis for the source's knowledge of Felton's drug deals, and (4) was not supplemented by testimony from the source to the issuing judge. Felton also contends Inspector Brown's efforts at corroboration were insufficient because he failed to tie Felton to any ongoing criminal drug activity. In the alternative, Felton argues his case should be remanded for a *Franks* hearing because the affidavit omitted material information concerning the credibility of the confidential source.

The government responds that the inclusion of details about the vehicle Felton was driving, the amount of methamphetamine he typically purchases, and the information Inspector Brown corroborated with Deputy Goebel about the April 2019 encounter and Felton's criminal history were sufficient to support probable cause for the warrant and obviated the need for a *Franks* hearing.

Here, the only evidence tying Felton to any contemporary drug activity was the source's uncorroborated tip. Though the source's general description of Felton's April 2019 encounter with police was correct, that incident itself was not indicative of drug activity. Deputy Goebel did not find any drugs or witness a controlled buy during the April 2019 encounter. Instead, the only details revealed by that encounter were the uncounted "wad" of cash, a lookalike firearm, and Felton's explanation for where he was going. But those facts on their own do not corroborate the confidential source's specific contention that Felton was driving to St. Louis to obtain

methamphetamine. Those details from the April 2019 encounter—when viewed independently from context provided by the confidential source—do not necessarily bear any connection to contemporaneous drug distribution. So any suggestion that Felton might have been on a drug run in the weeks leading up to the state judge's May 2019 probable cause determination is meager at best. *See United States v. Clark*, 935 F.3d 558, 566 (7th Cir. 2019). The affidavit also fails to explain how the confidential source acquired firsthand knowledge of Felton's suspected recent drug activity. *See United States v. Garcia*, 528 F.3d 481, 486 (7th Cir. 2008) (finding that the affidavit established probable cause because it specifically stated, among other things, that the source had been inside the defendant's apartment, observed what he believed to be cocaine, and believed it was cocaine because he had been involved in selling cocaine in the past). And Inspector Brown's general knowledge of Felton's prior criminal history does not add much to the equation, as one's status as a convicted felon "is not itself indicative of criminal activity." *Glover*, 755 F.3d at 817; *compare Clark*, 935 F.3d at 565–66 (finding similarly minimal corroborative efforts too weak to stave off a *Franks* hearing), *with United States v. Woodfork*, 999 F.3d 511, 516–17 (7th Cir. 2021) (finding officers' independent investigation, including four controlled buys, sufficient to overcome any omitted information about a source).

So, the affidavit rested almost entirely on the word of a source. Yet, the affidavit reflects no details about the source's relationship with Felton or firsthand knowledge of any drug activity. Nor did the confidential source in this case testify before the judge. This minimal corroboration is especially problematic because the issuing judge knew next to nothing about the confidential source. Without more information about the

source's own extensive criminal history, relationship to Felton, potential for bias, and receipt of favors and payments in exchange for cooperation, the judge could not fairly conclude that the information provided by the source was reliable. Recently, we have cautioned that the omission of such critical credibility information raises legitimate concerns about a confidential source's motives. *Clark*, 935 F.3d at 565; *Glover*, 755 F.3d at 817; *Bell*, 585 F.3d at 1050.

In sum, the sufficiency of the warrant affidavit hinged on the testimony of a confidential source, but the affidavit omitted critical information about that source's credibility. Because "the affidavit did not provide the [issuing judge] with even a minimum of information on credibility that might have triggered further inquiry," we "cannot defer to [this] under-informed finding of probable cause." *Glover*, 755 F.3d at 818. As mentioned earlier, other factors, such as additional corroboration of the alleged drug activity, could have also saved the affidavit. *Clark*, 935 F.3d at 565. While Inspector Brown corroborated information such as Felton's criminal history, his current residence, and the vehicle Felton was driving, Inspector Brown did not corroborate any of the drug activity that Felton was allegedly engaged in. *Woodfork*, 999 F.3d at 516–17. Without any corroboration of the criminal activity at issue, Brown's probable cause affidavit supporting the search warrant for the tracker was insufficient to support a finding of probable cause.

## D. Good Faith Exception

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *United States v. Martin*, 807 F.3d 842, 845 (7th Cir. 2015) (quoting *Leon*, 468 U.S. at 906). But to "'compel respect

for the constitutional guaranty' of freedom from unreasonable searches," the Supreme Court fashioned the exclusionary rule. *United States v. Hammond*, 996 F.3d 374, 384 (7th Cir. 2021) (quoting *Davis v. United States*, 564 U.S. 229, 236 (2011)); *see also United States v. Lewis*, 38 F.4th 527, 537 (7th Cir. 2022) (explaining the exclusionary rule "is a judicially created remedy"). "A defendant may invoke the rule to prevent tainted evidence from being used against him at trial, but the exclusionary rule is not a personal constitutional right, and its application exacts a heavy toll on both the judicial system and society at large." *Lewis*, 38 F.4th at 537 (internal quotations omitted). Therefore, the Supreme Court has explained the exclusionary rule does not apply when it would serve no deterrent function, such as "when law enforcement has relied in good faith on a facially valid warrant." *Hammond*, 996 F.3d at 384 (citing *Leon*, 468 U.S. at 922); *see also Woodfork*, 999 F.3d at 519.

"[A]n officer's decision to obtain a warrant creates a presumption that the officer acted in good faith." *Woodfork*, 999 F.3d at 519 (quoting *Yarber*, 915 F.3d at 1106). We have identified three ways a defendant is able to rebut this good faith presumption, including (1) when the affiant was dishonest or reckless when preparing the affidavit, (2) when the judge abandons the judicial role of neutrality, or (3) when the affidavit is so "bare bones" and lacking in probable cause that reliance on it is unreasonable. *Id.*; *see also Glover*, 755 F.3d at 818–19.

The district court held *Leon*'s good faith exception prevented suppression of the evidence recovered from the search of the vehicle Felton was driving because law enforcement was entitled to rely on the search warrant. On appeal, Felton

argues the good faith exception should not apply because Inspector Brown obtained the warrant by omitting material information about the confidential source and this omission was sufficient to support an inference that Inspector Brown acted with reckless disregard for the truth, entitling Felton to a *Franks* hearing.

The government contends that Felton is not entitled to a *Franks* hearing because he cannot make a substantial preliminary showing that Inspector Brown intended to mislead the judge, and the credibility information left out of the affidavit was more limited than Felton claims and, therefore, not material to the probable cause determination. We disagree.

To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the warrant affidavit contained material falsehoods or omissions that would alter the probable cause determination; and (2) the affiant omitted the information intentionally or with a reckless disregard for the truth. *Clark*, 935 F.3d at 563.

For the reasons discussed above, Felton has made a substantial preliminary showing that the affidavit supporting the search warrant for the tracker was defective. Therefore, the only factor that remains is the inquiry into Inspector Brown's state of mind.

"[C]redibility omissions themselves, even in the absence of more direct evidence of the officer's state of mind, provide sufficient circumstantial evidence to support a reasonable and thus permissible inference of reckless disregard for the truth." *Glover*, 755 F.3d at 820. We draw that inference here. Inspector Brown omitted crucial credibility information about the confidential source who provided the most relevant and specific

information about Felton's alleged drug trafficking activity. We leave it to the district court, however, to determine whether these omissions were deliberate or reckless. *See Clark*, 935 F.3d at 567.

Because Felton has made the substantial preliminary showing required for an evidentiary hearing on his *Franks* challenge, we remand.

### III.   CONCLUSION

For these reasons, we REVERSE the denial of the suppression motion and REMAND for an evidentiary hearing consistent with this decision.